590 So.2d 818 (1991)
Curtis and Shirley GRAHAM
v.
ST. CHARLES GENERAL HOSPITAL, et al.
No. 90-CA-0920.
Court of Appeal of Louisiana, Fourth Circuit.
November 26, 1991.
*819 Lawrence J. Smith & Associates, Lawrence J. Smith, Glen Patrick McGrath, New Orleans, for plaintiffs-appellants Curtis and Shirley Graham.
Peter E. Sperling, Lemle and Kelleher, New Orleans, for defendant-appellee Prytania Computerized Radiology Group, Inc.
Before BARRY, KLEES and CIACCIO, JJ.
KLEES, Judge.
Plaintiffs appeal from the district court's maintenance of an exception of prescription in favor of defendant Prytania Computerized Radiology Group, Inc. [hereinafter referred to as "PCRG"]. We reverse.
On March 1, 1987, at about 4:30 p.m., plaintiff Curtis Graham fell in the bathroom of his suite at St. Charles General Hospital, where he was recuperating from back surgery which had been performed two days earlier. After finding Mr. Graham lying on the floor with blood oozing from one ear, the nurses on duty called a "code". Dr. Louis Levy, II and Dr. Nicholas Ransom (who were watching a carnival parade outside the hospital) were paged, and Dr. Levy issued orders over the telephone for certain x-rays and laboratory tests, including a CT scan. Russell Bodin, an employee of PCRG, was called in from his home to return to the hospital and perform the CT scan, which was taken at approximately 8:00 p.m. At about 8:30 p.m., Dr. Charles N. Aprill, a radiologist, evaluated the scan and discovered a large epidural hematoma. At about 9:30 p.m., Mr. Graham was taken into surgery by Dr. Robert Applebaum, a neurosurgeon, who performed a left parietal craniotomy and left temporal craniectomy.
On February 26, 1988, plaintiffs filed a medical malpractice complaint with the Office of the Commissioner of Insurance, naming as defendants Dr. Levy, Dr. Henry LaRocca (who was Dr. Ransom's associate at the time) and St. Charles General Hospital. As all three are qualified health care providers governed by La.R.S. 40:1299.41 et seq., the Medical Malpractice Act, a medical review panel was formed to evaluate the claim. The last panel member was selected on June 8, 1988. The panel rendered an opinion in favor of the three defendants on April 20, 1989.
On June 8, 1989, plaintiffs Curtis and Shirley Graham filed suit in civil district court against St. Charles General Hospital, Dr. Levy and Dr. LaRocca, as well as PCRG and four other doctors not named in the original complaint lodged with the medical review panel. Those defendants who were not before the panel all filed exceptions of prescription.
On October 20, 1989, the district court granted the exceptions and dismissed those defendants. Plaintiffs then voluntarily dismissed *820 the four individual doctors and filed this appeal of the trial court's dismissal of PCRG. Plaintiff's action against St. Charles General, Dr. Levy and Dr. LaRocca has been stayed pending the outcome of this appeal.
The sole issue on appeal is whether the trial court erred in granting the exception of prescription in favor of PCRG. La.R.S. 9:5628 provides, in pertinent part:

§ 5628. Actions for medical malpractice
A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.4(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
According to plaintiffs' petition, the combined negligence of the defendants caused an unnecessary four hour delay from the time Curtis Graham fell until the time the CT scan was taken and another hour delay until the emergency surgery was performed, with the only apparent reason being the passage of a carnival parade outside the hospital that evening. Because these alleged acts of malpractice occured on March 1, 1987, and suit was not filed until June 8, 1989, more than one year after the acts complained of, the petition on its face has prescribed.
However, plaintiffs contend that the claim has not prescribed because the filing of the initial complaint with the medical review panel suspended prescription as to all joint tortfeasors who would be solidary obligors with those named in the complaint. The trial judge rejected this argument, basing his decision on R.S. 40:1299.41(G), which at that time read:
G. Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended for a period of ninety days after a panel is formed under the provision of this Part, provided a claim is made against the in solido obligor either under the provisions of this Part or in a court of law within the ninety day period. For the purpose of this Part the panel shall be deemed to be formed on the date that the third health care provider member of the panel is chosen.
Because plaintiffs did not file suit against PCRG within ninety-three days of June 8, 1988 (ninety days from the date the last panel member was selected, plus the three days which remained on the one-year prescription period when the suspension took effect), the trial judge found that prescription had run. His decision was correct in view of the law in existence on the date his judgment was rendered (October 20, 1989).
During the 1991 regular legislative session, however, this law was amended. R.S. 40:1299.41(G) now reads:
G. Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1299.47(A)(2)(a).
R.S. 40:1299.47(A), dealing with the medical review panel, was also amended, and now provides:
(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this *821 Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimiant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all solidary obligors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
In essence, the law has been changed to provide that the filing of a claim with the medical review panel suspends prescription with regard to non-named solidary obligors to the same extent that it is suspended for those named in the request for review by the panel. In the instant case, prescription against the named defendants, who are all qualified health care providers, was suspended until ninety days following notification of the medical review panel's opinion, which was issued on April 20, 1989. As suit was filed against PCRG and the originally named defendants on June 8, 1989, the suit against PCRG would be timely under the new law, although it was not timely under the law prior to its amendment.
Therefore, the primary issue on appeal becomes whether the amended version of the statute, which became effective September 6, 1991, should be applied retroactively in the instant case. The general rule is that a substantive law will not be applied retroactively; whereas, a law which is merely procedural or remedial in nature will be given retroactive effect in the absence of language showing a contrary intention. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978); Lott v. Haley, 370 So.2d 521 (La.1979). It is well established that statutes of limitation are remedial in nature and as such are generally accorded retroactive application, unless such application would disturb a party's preexisting or vested right. Lott v. Haley, supra, at 523-24. As the amendment in question lengthens the applicable prescriptive period, there is clearly no disturbance of vested rights. Therefore, we find it appropriate to apply the amended version of the Medical Malpractice Act on this appeal. In accordance with the law now in effect, plaintiff's suit against PCRG was timely filed.
Accordingly, we reverse the trial court's judgment which maintained defendant's exception of prescription, and remand the matter to the trial court for further proceedings consistent with this opinion.
REVERSED.