598 So.2d 1134 (1992)
Suzette WHITE, et vir., Plaintiffs-Appellants,
v.
WEST CARROLL HOSPITAL, INC. and Louisiana Hospital Association Insurance Trust Fund, Defendants-Appellees.
No. 23454-CA.
Court of Appeal of Louisiana, Second Circuit.
April 10, 1992.
Writ Granted July 1, 1992.
*1136 Fuhrer, Flournoy, Hunter & Morton by John E. Morton, Alexandria, for appellants.
Crawford & Anzelmo by Donald J. Anzelmo, Monroe, for appellees.
Before NORRIS, VICTORY and STEWART, JJ.
STEWART, Judge.
Plaintiffs, Suzette and John White, sued the following defendants for medical malpractice: West Carroll Parish Hospital Inc., Morris Management, Inc., Dr. Joan Brunson, and her insurer, Louisiana Medical Mutual Insurance Company (LAMMICO). Dr. Brunson and LAMMICO filed a peremptory exception of prescription. The trial court maintained the exception in favor of defendants, Dr. Brunson and LAMMICO, and plaintiffs appeal. We affirm.
This appeal presents the following issues: (1) whether this court may consider a prior suit which was not introduced into evidence at the prescription hearing; (2) whether LSA-R.S. 40:1299.41G may be applied retroactively in this case; (3) whether the initial filing of this suit against West Carroll Parish Hospital, Inc. and Morris Management, Inc. interrupted prescription as to the remaining defendants who were subsequently added as alleged solidary obligors; (4) whether the doctrine of contra non valentem applies to this case; and (5) whether the trial court abused its discretion by refusing to allow additional testimony at the hearing, and by making impermissible credibility determinations.
We shall first address the issue of whether this court may consider a prior suit record, because disposition of that issue is determinative of what constitutes the instant record on appeal.

MOTION TO STRIKE
Appellees filed a motion to strike with this court, asserting that, after the record of this suit number 20,060 was transmitted to this court from the Fifth Judicial District Court, counsel for plaintiffs, unilaterally and without court order, attempted to supplement the record with two volumes which contain pleadings and transcripts from a prior suit number 19,599. Appellees request that this court strike the "supplemental record," as well as all references in appellants' brief regarding suit number 19,599.
Appellants filed an "Opposition To Motion To Strike Or Alternatively, Appellants Motion To Formally Supplement The *1137 Record On Appeal Or Alternatively, Motion For Remand." In this document, appellants assert that the record was lodged on appeal on several dates, with notice given to all parties, without timely objection by appellees under LSA-C.C.P. art. 2161. Appellants' counsel admits that, when he discovered that the appellate record contained a transcript from suit number 19,599, but did not contain pleadings and other filings from that suit, he brought it to the attention of the clerk of this court and the clerk of the Fifth Judicial District Court. Appellants contend that URCA Rules 2-1.1 through 2-1.17 were violated by the failure to include the remainder of the record in suit number 19,599. In the alternative, appellants request either a "formal supplementation" of the record or a remand for "formal completion" of the record.
One of the two volumes of the "supplemental record" contains a certificate by the clerk of the Fifth Judicial District that the contents are the filings of record in suit number 19,599, as requested by counsel for plaintiffs. The other volume contains a transcript, certified by the court reporter as that of a March 31, 1988 hearing in suit number 19,599. Neither of these two volumes was in evidence before the trial court in the instant suit number 20,060.
LSA-C.C.P. art. 964 provides as follows:
The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter. The motion of a party shall be filed within ten days after service of the pleading upon mover, except that a defendant may move to strike any matter from the petition at any time within fifteen days of the service.
The purpose of a motion to strike under art. 964 is to purge pleadings of redundant, immaterial, impertinent, or scandalous matter. Gobin v. Kogel, 388 So.2d 486, 487 (La.App. 4th Cir.1980). The technical name given to a motion is, however, of little importance. See LSA-C.C.P. Article 962; Adams v. New Orleans Blood-Bank, Inc., 343 So.2d 363, 364 (La.App. 4th Cir.1977).
Appellees' motion to strike addresses itself to the supplemental record and all allegations and references, in appellants' brief, to the prior suit number 19,599. It is not simply a motion to clean up authorized pleadings. Thus, art. 964 is not applicable to defendants' motion in this case. See Gobin, supra. Appellants have attempted to unilaterally supplement the record on appeal, and it is this "supplemental record" to which defendants object. We shall treat defendants' motion to strike as a procedural objection to plaintiffs' attempt to supplement the record on appeal. See Adams, supra.
A review of the applicable statutes and jurisprudence indicate that appellees are correct with regard to the supplemental record filed with this court.
LSA-C.C.P. art. 2132 provides that
A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.
A record can be supplemented after it has been transmitted to the appellate court by stipulation of the parties, by the trial court, or by order of the appellate court only if the evidence was actually introduced into the record. In re Investigation of Smith, 546 So.2d 561 (La.App. 1st Cir.1989), writ denied, 550 So.2d 636 (La.1989); City of Eunice v. CLM Equipment Co., 505 So.2d 976 (La.App. 3d Cir. 1987) (emphasis ours).
Faced with an issue similar to that in the instant case, our brethren of the Third Circuit stated that,
In this court, plaintiffs ... seek an order to the trial court to send up, for incorporation as part of the appellate record, the trial court records in the two *1138 previous suits. Although some of the documents in the second suit were filed in evidence in this nullity suit, the whole records in those first two suits were not put in evidence in this case. For this court to now receive those records would constitute the taking of evidence and the exercise of original jurisdiction with which we are not vested. See Sec. 10, Art. V, La. Const. of 1974. The proposal by appellant does not come within the language of Code of Civil Procedure Article 2132 which deals with correcting erroneous records or supplementing records which are deficient as to matters actually introduced in evidence. Accordingly, the motion to supplement is denied.
Barber v. Testa, 331 So.2d 139 (La.App. 3d Cir.1976).
An appellate court must render its judgment upon the record on appeal and may not consider evidence which is outside the record. LSA-C.C.P. art. 2164.
Suit number 20,060 is that which is before us on appeal. Plaintiffs did not introduce into evidence the record of the prior suit number 19,599 at the hearing on defendant's exception of prescription. The trial court's Reasons for Judgment include a reference to suit number 19,599 in its chronology of important dates that relate to the exception. However, the trial court does not otherwise mention or address that suit in its legal analysis of the exception. We find no authority which would allow plaintiffs to supplement the record on appeal with transcripts or other filings which were neither in evidence or otherwise a part of the record before the trial court. Because the two volumes in question were not in evidence in the instant suit, we conclude that they are not part of the record before us and we do not consider them in our disposition of this appeal. Appellants' motion to supplement the record on appeal, and motion for remand, are denied.
With regard to the appellees' motion to strike references in the brief about suit number 19,599, we note that
The appellate briefs of the parties are not part of the record on appeal, and this court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal.
Tranum v. Hebert, 581 So.2d 1023, 1027 (La.App. 1st Cir.1991), writ denied, 584 So.2d 1169 (La.1991) (citations omitted). We therefore do not consider any of the statements or arguments in appellants' brief that refer to facts which are not a part of the instant record.
Having determined that the "supplemental record" of suit number 19,599 is not part of the appellate record, we now turn to the merits of the appeal.

THE APPEAL
Appellants complain that the trial court erred in granting defendants' peremptory exception of prescription because: (1) prescription was interrupted by the suit filed against West Carroll Hospital; (2) prescription was interrupted by the request for review before the Commissioner of Insurance; (3) appellants had no actual or constructive knowledge of Dr. Brunson's allegedly tortious act(s) and/or the relationship between Ms. White's injuries and Dr. Brunson's acts or omissions; (4) appellants were precluded from discovering facts regarding actual or constructive knowledge and concealment by Dr. Brunson. Appellants also contend the trial court erred in making certain credibility determinations without observing the demeanor of the parties and their witnesses. We disagree.

Procedural Facts
The record on appeal reveals the following chronology of operative facts:
May 4-15, 1987Plaintiff, Suzette White, sustained injuries which manifested themselves during hospitalization at West Carroll Parish Hospital.
Date unknownMedical review panel was formed with regard to the hospital and its administrative corporate entity, Morris Management, Inc.
*1139 March 15, 1989Medical review panel rendered an opinion favorable to the hospital.
April 24, 1989Plaintiffs filed medical malpractice suit against West Carroll Parish Hospital and Morris Management, Inc. (suit number 20,060).
October 10, 1989the defendants answered the petition and filed a third party demand against Dr. Brunson and LAMMICO.
November 28, 1989Plaintiffs filed a supplemental and amended petition which named as defendants Dr. Joan Brunson and her professional liability insurer, Louisiana Medical Mutual Insurance Company (LAMMICO).
January 18, 1990Dr. Brunson and LAMMICO filed a dilatory exception of prematurity, alleging that plaintiffs failed to comply with the Louisiana Medical Malpractice Act's prerequisites to filing of suit against Dr. Brunson, a qualified health care provider within the meaning of the Act.
January 18, 1990Dr. Brunson and LAMMICO filed a peremptory exception of prescription.
May 24, 1991Trial court entered judgment which dismissed plaintiffs' suit against Dr. Brunson and LAMMICO, with prejudice, at plaintiffs' costs.

Discussion
Generally, the burden of proving that a suit has prescribed rests with the party pleading prescription. Tranum, supra; Arabie v. Northwest Mining Corp., 567 So.2d 783, 785 (La.App. 3d Cir.1990), writs denied, 571 So.2d 656, 571 So.2d 657 (La.1990) (citation omitted); Brown v. Reese, 532 So.2d 187, 189 (La.App. 2nd Cir.1988). However, when the plaintiff's petition shows on its face that the prescriptive period has run, and the plaintiff relies upon a suspension or interruption of prescription, the burden is on the plaintiff to prove the suspension or interruption. Restrepo v. Fortunato, 556 So.2d 1362 (La. App. 5th Cir.1990), writ denied, 560 So.2d 11 (La.1990); Arabie, Tranum and Brown, all supra.
A medical malpractice action must be filed within one year from the date of the alleged, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect. LSA-R.S. 9:5628 A.
The alleged acts of medical malpractice occurred between May 4, 1987 and May 15, 1987 and suit was not filed until April 24, 1989, more than one year after the act complained of and the discovery of injuries. On the face of the petition, appellants action has prescribed. Appellants therefore bear the burden of showing a suspension or interruption. For the reasons discussed in the previous section, we do not address appellants' argument that the filing of suit number 19,599 interrupted prescription as to the appellees.
Retroactive application
Appellants assert that LSA-R.S. 40:1299.41 G, and LSA-R.S. 40:1299.47 A, interrupted prescription of this action. According to appellants, these statutes, as amended in 1991, are retroactively applicable to this case. We note at the outset that the statutes referred to deal with suspension, and not interruption, of the applicable prescriptive period. See Brister v. Southern Baptist Hospitals, Inc., 555 So.2d 641 (La.App. 4th Cir.1989); (for the general distinction between suspension and interruption of prescription, see and compare LSA-C.C. arts. 3466 and 3472).
The medical malpractice act
Before its amendment in 1991, LSA-R.S. 40:1299.41 G allowed for suspension of prescription with regard to certain solidary obligors as follows (emphasis added):
G. Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended for a period of ninety days after a panel is formed under *1140 the provision of this Part, provided a claim is made against the in solido obligor either under the provisions of this Part or in a court of law within the ninety day period. For the purpose of this Part the panel shall be deemed to be formed on the date that the third health care provider member of the panel is chosen.
LSA-R.S. 40:1299.41 G, as amended by Act 661 of the 1991 Legislature, effective September 6, 1991, now reads:
G. Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1299.47(A)(2)(a).
Also amended by Act 661 is R.S. 40:1299.47 A, effective September 6, 1991, provides:
(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of issuance of the opinion by the medical review panel,.... The filing of a request for review of a claim shall suspend the running of prescription against all solidary obligors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
In essence, the law has been changed to provide that the filing of a claim with the medical review panel suspends prescription with regard to non-named solidary obligors to the same extent that it is suspended for those named in the request for review by the panel. Graham v. St. Charles General Hospital, 590 So.2d 818, 821 (La.App. 4th Cir.1991). The amendment deleted the proviso that a claim must be made under the Louisiana Malpractice Act, or suit must be instituted against the alleged solidary obligor, within the 90 day suspensive period. The amended statutes allow the same 90 day suspension of prescription for the unnamed solidary obligor as for those defendants who are subject to the panel proceedings.[1]
Legal principles.
Prescription runs against all persons except those included in some exception established by law. Persons not included by law in the exceptions are not entitled to the suspension of the prescription running against them. Cooper v. Lykes, 49 So.2d 3, 5 (La.1950).
In the absence of contrary legislative expression, substantive laws apply prospectively only, and procedural laws apply both prospectively and retroactively. LSA-C.C. art. 6; Lott v. Haley, 370 So.2d 521, 523 (La.1979); Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1339 (La. 1978). A procedural law is remedial in the sense of dealing with the remedy rather than the right itself. Comment (d), LSA-C.C. art. 6.
Under our law, statutes of prescription are remedial and are applicable to all actions instituted after they become effective, *1141 even though the cause of action occurred before the statute was enacted. Brown v. Reese, 532 So.2d 187, 191 (La. App. 3d Cir.1988) (emphasis ours).
However, exceptions to the general rule of retroactivity for prescription statutes include instances where retroactive application would strip a party of a vested right or would revive an already prescribed cause of action. LeBlanc v. City of Lafayette, 558 So.2d 259, 262 (La.App. 3d Cir. 1990) (emphasis ours); see also, Brown, supra.
Extending or prolonging the period in which a suit may be brought to assert a right pertains to the remedy and does not violate a vested property right, unless the right has become perfected and fixed by the completion of the prescription at the time the extension of the period becomes effective.
Splane v. Tubre, 6 So.2d 361, 363 (La.App. 1st Cir.1942). A legislative act cannot revive a cause of action which was barred by liberative prescription prior to the effective date of the act. Hall v. Hall, 516 So.2d 119, 120 (La.1987).
In support of their contention that the 1991 amendment applies retroactively to this case, appellants cite Graham v. St. Charles General Hospital, 590 So.2d 818 (La.App. 4th Cir.1991). There, plaintiffs appealed the trial court judgment which granted the defendant's exception of prescription. The trial court found that prescription had run because plaintiffs did not file suit against defendant"... within ninety-three days of June 8, 1988 (ninety days from the date the last panel member was selected, plus the three days which remained on the one-year prescription period when the suspension took effect)...." Graham, at 820. The Fourth Circuit Court of Appeal then retroactively applied the amended statutes, LSA-R.S. 40:1299.41 G and 40:1299.47 A, even though plaintiffs had failed to show a suspension or interruption of prescription as to the defendant. The court stated,
As the amendment in question lengthens the applicable prescriptive period, there is clearly no disturbance of vested rights. Therefore, we find it appropriate to apply the amended version of the Medical Malpractice Act on this appeal. In accordance with the law now in effect, plaintiff's suit against [defendant] was timely filed.
Graham, at 821. The court cited Lott v. Haley, and Ardoin v. Hartford Accident & Indemnity Co., both supra, for the general rule which allows retroactive application of remedial statutes, but cited no statutory or jurisprudential support for their conclusion that there was "clearly no disturbance of vested rights".
We respectfully decline to follow Graham. That court noted the "disturbance of vested rights" exception to the general rule of retroactivity, but did not address the "revival of a prescribed action" exception. As we read Hall, LeBlanc, Brown, Lott, and Ardoin, all supra, if appellants' action against appellees had prescribed prior to the effective date of the amendment, these statutes may not be applied retroactively. Accordingly, we hold that the current LSA-R.S. 40:1299.41 G and 40:1299.47 A may not be applied retroactively to suspend the running of prescription on a claim which had already prescribed prior to their September 6, 1991 effective date. We shall now determine whether appellants' claim had prescribed prior to the effective date of the amendment.
Appellants had one year, from the May 1987 date of the alleged malpractice acts and discovery of injuries, to timely file suit under R.S. 9:5628. A medical review panel was selected to review the claim against the hospital. Because appellants claim has prescribed on its face, appellants have the burden of showing a suspension or interruption of the R.S. 9:5628 one year prescriptive period.
Was prescription suspended by the Medical Malpractice Act?
For reasons discussed above, the 1991 amendment to LSA-R.S. 40:1299.41 G and 40:1299.47 A are not retroactively applied unless the action was viable on the effective date of the amendment. We shall therefore determine whether, on the facts *1142 of this case, prescription was affected by the statute in effect prior to amendment.
Although the record does not disclose the date on which the last member of the panel was selected, the record contains sufficient information for our analysis of whether prescription was suspended by pre-amendment LSA-R.S. 40:1299.41 G. The medical review panel opinion was issued March 15, 1989. Prior to the 1991 amendment, the running of prescription against appellees as alleged solidary obligors was suspended for ninety days post selection of the review panel, provided that appellants made a claim under the Medical Malpractice act, or filed suit, against appellees within the 90 days. Appellants did not sue appellees until November 28, 1989, some eight months after the date of the panel's opinion. As of January 1990, appellants had not made a claim against appellees under the Medical Malpractice Act.
The panel's third member had already been selected prior to March 15, 1989, the date the panel rendered its opinion. Because appellants failed to take the requisite action against appellees within 90 days of the date of the panel's opinion, it is apparent that appellants failed to act within 90 days of the panel formation as required by the statute. Appellants, accordingly, were not entitled to the 90 day period of suspension provided by 40:1299.41 G. Without the benefit of the 90 day suspension, appellants' action against appellees prescribed in May 1988.
Moreover, even if appellants had the benefit of the 90 day suspension under pre-amendment 40:1299.41 G, appellants have not carried the burden of showing the beginning date of the suspension, i.e., the date the third panel member was selected. If the panel were selected prior to January 24, 1989, prescription would have tolled prior to the April 24, 1989 filing date of this suit. However, considering only those filings in the appellate record, we conclude that the running of prescription on this action was not suspended by LSA-R.S. 40:1299.41 G.
Was prescription interrupted by the filing of this suit?
We now address whether the filing of this suit interrupted prescription because the petition, as amended, alleges that appellees are solidary obligors with the defendants originally named in this suit.
Prescription is interrupted by a timely filed suit against a purported solidary obligor. Hebert v. Doctors Hospital, 486 So.2d 717, 725 (La.1986); LSA-C.C. arts. 3462 and 1799. However,
Interruption of prescription against joint tortfeasor A occurs by a timely lawsuit against joint tortfeasor B only as to conduct for which tortfeasors A and B are responsible, and only if the cause of action against tortfeasor A was not prescribed when the suit against tortfeasor B was filed. Whitnell v. Menville, 540 So.2d 304 (La.1989). Once prescription occurs it cannot be interrupted. Timely suit against one solidary obligor does not interrupt prescription that has run against another solidary obligor. Juneau v. Hartford Insurance Company, 458 So.2d 1011 (La.App. 3d Cir.1984), writ denied, 462 So.2d 198 (La.1984).
Noggarath v. Fisher, 557 So.2d 1036, 1037 (La.App. 4th Cir.1990) (emphasis added). See also, Arabie, supra, at 785.
Joint tortfeasors are deemed solidary obligors. A party seeking to avoid prescription by claiming solidary liability between two or more parties bears the burden of proving that solidary relationship. Arabie, supra at 785 (citations omitted); LSA-C.C. arts. 1799 and 3503.
If Dr. Brunson is a joint tortfeasor, the filing of suit against the hospital, on April 24, 1989 would have interrupted prescription as to appellees, LSA-C.C. art. 1799, as long as prescription with regard to appellees had not run as of that date. See Gravois v. New England Ins. Co., 553 So.2d 1034, 1041 (La.App. 4th Cir.1989), (where, because prescription had not run against the unnamed solidary obligor as of the date the original petition was filed, the trial court erred in maintaining the exception of prescription absent a finding that the parties were not joint tortfeasors).
*1143 We have determined that, with regard to appellees, prescription had run prior to the date on which appellants filed this suit. Consequently, the April 24, 1989 petition against the original defendants, even if solidary obligors as alleged in the amended petition, did not interrupt prescription with regard to appellees.
We conclude that the running of the R.S. 9:5628 one year prescription on this action against appellees was neither suspended nor interrupted. Appellants' action against appellees had prescribed in May 1988, long before the effective date of the amended statutes. Accordingly, we do not apply the 1991 amendment retroactively to revive the action.
Contra Non Valentem
Appellants argue that they were unaware of any claim they had against appellees until the hospital submitted a medical review panel position paper dated March 13, 1989. Accordingly, appellants assert that, under the doctrine of contra non valentem, prescription could not have begun to run prior to that filing.
Under the doctrine of contra non valentem, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant. Restrepo, supra, 556 So.2d at 1364.
The doctrine of contra non valentem applies in four general situations:
(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) where the cause of action is not know or reasonably knowable by the plaintiff, even though the ignorance is not induced by the defendant. Whitnell v. Menville, 540 So.2d 304, 308 (La.1989).
Rainowski v. St. Patrick's Hospital, 564 So.2d 671, 674 (La.1990). Appellants' third complaint is that the instant facts fall within the fourth general situation in which the doctrine applies.
This principle does not except a claim from the running of prescription if the asserted ignorance is attributable to the plaintiff's own willfulness or neglect. Corsey v. State Department of Corrections, 375 So.2d 1319, 1322 (La.1979). "A plaintiff will be deemed to know what he could by reasonable diligence have learned." Id., (citations omitted).
Appellants allege they knew of the injuries during the May 1987 hospitalization and shortly thereafter. They also knew that the injuries were related to and/or caused by the medical treatment Mrs. White received while hospitalized. Dr. Brunson was Mrs. White's treating physician during the period of hospitalization. Unlike the cases appellants cite in support of this argument, the connection between the instant injuries and the medical treatment received was almost immediately apparent to appellants. The trial court correctly found that appellants had actual or constructive knowledge, prior to allegations by others, of the relationship between the treating physician and the injuries sustained due to medical treatment.
Appellants also assert that the hospital concealed its true intent to implicate Dr. Brunson by not filing its answer and third party demand against appellees until October 1989. After review of the record, we find no evidence which indicates that anyone concealed, misled, or lulled appellants' into inaction. There is no indication that information was either requested by appellants or withheld by the hospital such that, after reasonable diligence, appellants were unable to obtain data regarding medical treatment or possible culpability.
According to appellants, Dr. Brunson misled them regarding the causation of the injuries by implicating the hospital rather than herself. Even if Dr. Brunson suggested that the hospital was responsible for Mrs. White's injuries, on the facts of *1144 this case, we do not find it reasonable for appellants to rely solely on the allegation of the hospital as their initial notice of the possible connection between the allegedly deficient medical treatment and the actions or omissions of Mrs. White's treating physician.
The Remaining Assignments of Error
Appellants final complaint is that the trial court's refusal to allow additional evidence at the prescription hearing, via deposition or testimony, precluded them from discovering facts regarding constructive knowledge and concealment of information during the course of treatment. Appellants further assert that the trial court impermissibly made credibility determinations about Mrs. White's constructive knowledge, without the benefit of observing the demeanor of the parties and their witnesses.
When pleaded at or prior to trial, evidence may be introduced to support or controvert the plea of prescription when the grounds thereof do not appear from the petition. LSA-C.C.P. arts. 931, 927.
Appellants' argument targets the trial court's refusal to require that Dr. Brunson be re-deposed or subpoenaed to appear at the prescription hearing. Under the circumstances here presented, we conclude that the trial court was not required to allow additional evidence. The record contains a 92-page deposition of Dr. Brunson in which counsel for appellants had the opportunity to question her on any number of topics. We find no abuse of the trial court's much discretion.
We note that appellants merely make the conclusory statement that the trial court engaged in impermissible credibility determinations. No support or reference to the record is cited for this proposition. Review of the reasons for judgment reveal no basis for this assertion, and the assignment is meritless.

CONCLUSION
Pursuant to R.S. 9:5628, appellants' action against appellees prescribed one year after the May 1987 injurious acts and discovery of the injuries. Appellants failed to show that the one year prescription was suspended by pre-amendment R.S. 40:1299.41. This suit was filed in April 1989, almost one year after prescription had run. We do not retroactively apply the amended statutes, R.S. 40:1299.41 and R.S. 40:1299.47, to revive the action which prescribed prior to the September 6, 1991 effective date of the amendment. Similarly, the interruption of prescription provided by LSA-C.C. arts. 1799 and 3503 does not apply in this case because prescription had already run prior to the date on which appellants instituted this suit. For the foregoing reasons, we affirm the grant of the exception of prescription in favor of appellees. Costs of this appeal are assessed against appellants.
AFFIRMED.
NOTES
[1] The practical difference between the pre- and post-amendment statutes may be demonstrated by the following hypothet: Plaintiff P has a medical review panel appointed to examine facts regarding defendant D1. P then files suit against D1. P subsequently amends the petition to allege that defendant D2 is a solidary obligor with D1.

Applying the statute prior to amendment: the running of prescription on P's claim against D2 is suspended for 90 days after formation of the panel, provided that P either files suit, or files a claim under the Medical Malpractice Act, against D2 within the 90 day suspensive period. Therefore, unless D2 is sued or made subject to medical review panel proceedings within the specified 90 day period, the running of prescription on P's claim against D2 is not suspended pursuant to 40:1299.41.
Applying the statutes as amended: the suspension of prescription for P's claim against D2 is the same as to the claim against D1. Therefore, the running of prescription on P's claim against both D1 and D2 is suspended for 90 days after notice of the panel's opinion.