United States Court of Appeals,

Fifth Circuit.

No. 91–3391.

TRIZEC PROPERTIES, INC., Plaintiff–Appellant,

v.

UNITED STATES MINERAL PRODUCTS COMPANY, Defendant–Appellee.

Oct. 8, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, SMITH, Circuit Judge, and FITZWATER,[*] District Judge.

POLITZ, Chief Judge:

roperties, Inc. appeals a summary judgment in favor of United States Mineral Products Company in an action to recover asbestos abatement costs. Concluding that Trizec's claim is prescribed, *i.e.,* time-barred, we affirm.

Background

In 1965 United States Mineral Products Company (USMPC), a New Jersey corporation with its principal place of business in that state, sold asbestos-laden fireproofing material to a subcontractor for use in the construction of a building in Atlanta, Georgia. Trizec, a Delaware corporation with its principal place of business in Michigan, purchased the building in 1975, became aware in the early 1980s that the building contained asbestos but did not begin asbestos abatement until 1985. In January 1988 Trizec learned that USMPC manufactured the asbestos. Trizec filed the instant complaint against USMPC in the federal district court for the Eastern District of Louisiana in September 1989. Trizec candidly admits to having filed this action in Louisiana because of a 1985 Louisiana statute which purportedly provides a prescriptive period[1] of five years from the date of

---

[*]District Judge of the Northern District of Texas, sitting by designation.

[1]In the civil law a *prescriptive period* is the analogue to a common law statute of limitations. Any differences between the two legal concepts are not germane to this appeal.

discovery of the identity of the manufacturer.

USMPC answered Trizec's complaint asserting, *inter alia,* a limitations defense. USMPC urged in a summary judgment motion that Louisiana's borrowing statute[2] required that the district court apply the general Georgia limitations statute.[3] The district court granted summary judgment on the basis of the Georgia limitations statute and dismissed Trizec's complaint as time-barred. Trizec timely appealed.

Analysis

The standard of review for a summary judgment is well settled: we review the record *de novo* to ascertain whether any genuine issue exists as to any material fact and, finding none, ascertain whether the moving party is entitled to a judgment as a matter of law.[4] Without weighing the evidence, assessing its probative value, or resolving any factual disputes, we search the summary judgment record for resolution-determinative factual disputes.[5] Finding none, we may determine whether the successful party is entitled to judgment as a matter of law. Because the parties do not dispute the district court's findings of fact we accept same for purposes of this appeal. Our review need only resolve whether USMPC is entitled to judgment as a matter of law.

*Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress. Because we may not proceed without requisite jurisdiction, it is incumbent upon federal courts, trial and appellate, to examine constantly the basis

---

[2]La.Civ.Code art. 15 (1870) was amended and reenacted by 1991 La.Acts No. 923, § 1. The 1870 article is applicable to all actions filed prior to Jan. 1, 1992. 1991 La.Acts No. 923, § 4.

[3]Ga.Code Ann. § 9–3–30. Neither party urged that the law of New Jersey, Michigan, Delaware, or Louisiana might apply to the substantive issues.

[4]Fed.R.Civ.P. 56(c); *Miles v. Amer. Tel. & Tel.,* 703 F.2d 193 (5th Cir.1983).

[5]*Kennett–Murray Corp. v. Bone,* 622 F.2d 887 (5th Cir.1980).

of jurisdiction, doing so on our own motion if necessary.[6]

In *Trust Co. Bank v. United States Gypsum Co.,*[7] a case factually indistinguishable from the case at bar, United States Gypsum challenged federal subject matter jurisdiction by invoking the local action doctrine.[8] Relying on circuit precedent we determined that the issue of subject matter jurisdiction turned on whether the law of the forum state characterized the action as local or transitory.[9] The *Trust Co. Bank* court noted that in *Holmes v. Barclay,*[10] the Louisiana Supreme Court rejected the local action doctrine in a case of trespass to property in Illinois. Because the disposition in *Trust Co. Bank* turned on Mississippi law, however, the reference to the *Holmes* holding was mere dictum. In the case at bar, Louisiana law controls the issue; thus, *Holmes* precludes a challenge to federal court subject matter jurisdiction on the grounds of the local action doctrine.

*Choice of Law*

A federal district court applies the choice of law rules of the forum state.[11] The Supreme Court recently reaffirmed the principle that a state *may* apply its own statutes of limitations to foreign

---

[6]*Save the Bay, Inc. v. The United States Army,* 639 F.2d 1100 (5th Cir.1981).

[7]950 F.2d 1144 (5th Cir.1992).

[8]*Livingston v. Jefferson,* 15 F.Cas. 660 (C.C.D.Va.1811) (No. 8411) as modified by *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892) and followed in this circuit in *Chateau Lafayette Apartments, Inc. v. Meadow Brook National Bank,* 416 F.2d 301 (5th Cir.1969), and *Hayes v. Gulf Oil Corp.,* 821 F.2d 285 (5th Cir.1987).

[9]The application of the law of the forum state to the determination of the issue of federal court subject matter jurisdiction is contrary to the holding in *Livingston.* This anomaly has not gone unnoticed in our cases. *See Trust Co. Bank,* 950 F.2d at 1149–1150. Nonetheless, we are bound to prior panel opinions absent *en banc* reconsideration or a superseding contrary Supreme Court case, neither of which has occurred on this issue. *Trust Co. Bank,* 950 F.2d at 1150.

[10]4 La.Ann. 63 (1849).

[11]*Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Kozan v. Comstock,* 270 F.2d 839 (5th Cir.1959); *Ardoyno v. Kyzar,* 426 F.Supp. 78 (E.D.La.1976).

causes of action brought in its courts.[12]  Louisiana courts, and this court under *Erie* acting as a Louisiana court, have not hesitated to exercise this power.[13]

Unlike most other American jurisdictions, Louisiana has always had codified choice of law rules.[14]  Civil Code Article 15 (1870), paragraphs 6 and 7, provide the choice of law rule for statutes of limitations.[15]  Trizec contends that paragraph 6 provides the correct choice of law rule and that the rule mandates the application of the Louisiana prescriptive period.  Article 15, ¶ 6 provides that:

> The prescription provided by the laws of this state applies to an obligation arising under the laws of another jurisdiction which is sought to be enforced in this state.

USMPC, on the other hand, contends that the district court correctly determined that the correct choice of law rule is paragraph 7 which mandates that the Georgia statute of limitations be applied. Article 15, ¶ 7 provides that:

> When a contract or obligation has been entered into between persons who reside out of this state, which is to be paid or performed out of this state, and such contract or obligation is barred by prescription, or the statute of limitations, of the place where it is to be paid or performed, it shall be considered and held to be barred by prescription in this state, upon the debtor who is thus discharged coming into this state.

As in *Kozan,* we must first "determin[e] ... the proper Louisiana conflict of laws rule."[16]

---

[12]*Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988).

[13]*Kozan;  Wright v. Fireman's Fund Ins. Co.,* 522 F.2d 1376 (5th Cir.1975);  *Gierling v. Garner,* 284 So.2d 664 (La.App.1973).

[14]In 1991 Louisiana enacted a new and more comprehensive set of choice of law rules. La.Civ.Code arts. 3515–3549 (1991).  The new rules are applicable to actions filed after January 1, 1992. *See* 1991 La.Acts, No. 923, § 4.

[15]*Kozan* acknowledged an exception to the Louisiana choice of law rules of Article 15 in that "[i]f a foreign statute of limitations not only bars the remedy but extinguishes the substantive right as well, then the forum will apply the limitations period of the foreign jurisdiction." *Kozan,* 270 F.2d at 839.  USMPC makes no claim that section 9–3–30 extinguishes the substantive right;  the exception is inapplicable.

[16]*Kozan,* 270 F.2d at 839.

We agree with the district court's initial conclusion that Trizec's various negligence claims represent obligations within the meaning of the Civil Code.[17] Therefore either paragraph 6 or 7 might be applicable. The district court then assumed *sub silentio* that Trizec and USMPC "entered into" an obligation and shifted its analysis to paragraph 7 without explaining why paragraph 6 was no longer under consideration. This was an analytical misstep.

A conventional obligation is "an agreement by two or more parties whereby obligations are created, modified, or extinguished."[18] Contracts are nominate or innominate.[19] The nominate contracts, found in Book III, Titles VI–XX of the Civil Code, are: Matrimonial Regimes, Sale, Exchange, Lease, Rents and Annuities, Partnership, Loan, Deposit and Sequestration, Aleatory Contracts, Mandate, Suretyship, Transaction and Compromise, Respite, Arbitration, and Pledge. The *sine qua non* of all conventional obligations, *i.e.* contracts, is the consensual nature of the engagement.[20]

Quasi–Contracts, Offenses, and Quasi–Offenses, acts which give rise to other than conventional obligations, are found in Book III, Title V, La.Civ.Code art. 1914, comment (c). These are non-consensual obligations which are implied by law or which arise by operation of law as a result of an intentional or negligent act.[21] Furthermore, the general rules governing contracts, including the

---

[17]La.Civ.Code arts. 1756 and 1757 (1984).

The parties and the district court implicitly assumed that the 1984 revision to the Obligations articles of the Civil Code applies to acts that, in part, occurred prior to the Jan. 1, 1985 effective date of the revision. With respect to the district court's reliance on La.Civ.Code arts. 1956 and 1957 (1984), we agree with the Louisiana Second Circuit which held that where the comments to a revised Code article indicate that the article represents no change in the law, it may be applied retroactively. *State v. Joint Com'n on Accreditation of Hospitals, Inc.,* 470 So.2d 169 (La.App.1985).

[18]La.Civ.Code art. 1906.

[19]La.Civ.Code art. 1914.

[20]La.Civ.Code art. 1927.

[21]La.Civ.Code art. 2292.

rules of consent, are inapplicable to obligations arising from quasi-contracts, offenses, or quasi-offenses.[22]

Paragraph 7 of Article 15 by its express terms applies only to contracts or obligations "entered into"; these are consensual obligations. Perforce we must conclude that paragraph 7 is not applicable to a non-consensual obligation arising out of a quasi-contract, offense, or quasi-offense. This conclusion is reinforced by the fact that the parties have not cited, nor has our research revealed, any case in which paragraph 7 of Article 15 has been applied by any court to a pure tort case. Furthermore, the conclusion is consistent with the location of Civil Code article 2315, the fountainhead of Louisiana tort law, in Book III, Title V, Chapter 2, outside of the codical provisions for contracts. Thus, as an Erie court we conclude that paragraph 6 of Article 15 provides the correct choice of law rule and that a Louisiana court would apply the applicable Louisiana prescriptive statutes to the case at bar.[23]

*Selection of the Appropriate Prescriptive Period*

Among the possible Louisiana prescriptive periods from which we must select are: (1) the general one-year prescriptive period applicable to torts;[24] (2) the one-year prescriptive period applicable to damage to immovable property;[25] or, as Trizec insists, (3) the five-year "prescriptive" period of R.S. 9:5644.[26]

---

[22]La.Civ.Code arts. 1914 and 1915.

[23]*American Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384 (5th Cir.1991).

[24]La.Civ.Code art. 3492.

[25]La.Civ.Code art. 3493.

[26]As an aside we note that in March 1989 the Georgia Supreme Court struck down a statute remarkably similar to La.R.S. 9:5644, as being violative of the equal protection clause of the 1983 Georgia Constitution. *Celotex Corp. v. St. Joseph Hospital,* 259 Ga. 108, 376 S.E.2d 880 (1989). O.C.G.A. § 9–3–30.1, effective April 14, 1988, would have revived otherwise time-barred asbestos abatement actions so as to permit filing of suit no later than July 1, 1990.

We first conclude that Trizec's contention that R.S. 9:5644(B) creates a prescriptive period is not persuasive. We find this to be nothing more than a statutory suspension of prescription.[27] Section B provides that:

> Notwithstanding any other provision of law to the contrary, any time limitation or prescriptive period which may be applicable to any action to recover for asbestos abatement work *shall not apply or expire until* five years after the date on which the party seeking to recover has completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later. [Emphasis ours.]

This section provides no express or implied prescriptive period. It merely suspends the running of "any time limitation or prescriptive period which may be applicable" until five years after the happening of the later of two events: (1) completion of the asbestos abatement work, or (2) discovery of the identity of the manufacturer of the materials which require abatement. This section contains no language of revival of an expired (*i.e.* prescribed) cause of action. As a suspensive statute, R.S. 9:5644(B) cannot be applied retroactively to revive an action that prescribed prior to its effective date.[28]

Prior to the effective date of R.S. 9:5644,[29] Article 3492 or 3493 controlled the issue of

---

[27]La.Civ.Code arts. 3467 and 3472.

[28]Louisiana Courts of Appeal are divided over the question whether a suspensive statute may be applied retroactively so as to revive a cause of action already prescribed. *See White v. West Carroll Hospital, Inc.,* 598 So.2d 1134 (La.App. 2d Cir.), *writ granted,* 600 So.2d 672 (La. July 1, 1992) (amendments to suspensive statutes La.R.S. 40:1299.41(G) and 40:1299.47 do not retroactively revive prescribed action); *but see Graham v. St. Charles General Hospital,* 590 So.2d 818 (La.App. 4th Cir.1991) (La.R.S. 40:1299.41(G) and 40:1299.47 applied retroactively to prescribed action). We observe that in the few instances in which the Louisiana Legislature has intended this two-fold effect of retroactivity and revival, it has expressly stated its intention. *Accord* La.R.S. 9:5811, 9:5630, and 9:5625. *Compare* R.S. 9:5627. There is no express statement of retroactivity in R.S. 9:5644. We are persuaded the *White* court has the better resolution and opt to follow it.

[29]La.R.S. 9:5644 became effective on Sept. 6, 1985. La. Const. Art. 3, § 19.

prescription.[30] Louisiana, unlike Georgia, applies the discovery rule to prescriptive statutes.[31] Under *Jordan* and its progeny, the prescriptive period on a cause of action begins to run when the person in whose favor a cause of action exists knows or should have known of the existence of his cause of action. Undisputed actual notice is generally sufficient to place a reasonable person on notice of the existence of a cause of action against a specific person and to start the running of the prescriptive period.

In order for the prescriptive period of Articles 3492 or 3493 to be tolled by R.S. 9:5644(B), Trizec had to demonstrate that the one-year period provided by those articles did not accrue before R.S. 9:5644 became effective on Sept. 6, 1985. The district court made a factual finding that Trizec had actual knowledge of the existence of the asbestos in the early 1980s as a result of several studies conducted to determine the presence and effect of asbestos in the building. Under Louisiana law, when a claim is prescribed on its face the plaintiff bears the burden of proving interruption or suspension of prescription.[32] Trizec's summary judgment proof does not acquit this burden. Trizec has failed to offer the requisite proof that it acquired the relevant knowledge on or after Sept. 6, 1984, within one year prior to the effective date of La.R.S. 9:5644. Trizec, therefore, has not established the basis for a suspension of prescription and its cause of action had already expired under Article 3492 or 3493 when R.S. 9:5644 became law.

As a consequence, the viability of Trizec's cause of action hinges upon whether it falls within the purview of the "revival" provision of R.S. 9:5644(C), which provides:

> Any person who has a cause of action to recover for asbestos abatement work under

---

[30]The prescription articles were amended and reenacted in 1983 without any substantive change in the law. *See* 1983 La.Acts, No. 173, § 1 and comments (a) to both Articles 3492 and 3493 (1983). *See* n. 8, *supra.*

[31]*Jordan v. Employee Transfer Corp.,* 509 So.2d 420 (La.1987).

[32]*Lima v. Schmidt,* 595 So.2d 624 (La.1992).

the provisions of this Section but whose action is *barred by the prescriptive period provided in R.S. 9:5644* shall have one year from the effective date of this Act within which to bring an action or be forever barred. [Emphasis ours.]

This subsection is far from a model of clarity. The language "barred by the prescriptive period provided in R.S. 9:5644" presents no small difficulty of interpretation. If we conclude that the "prescriptive period provided in R.S. 9:5644" is the five-year period of section B, then we necessarily trip upon an absurdity—the five-year period could not start until Sept. 6, 1985, the effective date of R.S. 9:5644; thus no action barred by *that* five-year period could be brought within one year of the effective date of the statute. Such a literal interpretation reduces section C to meaningless surplusage. We may not accept that course. "When a statute is susceptible of two interpretations, a court must choose the one which affords a reasonable and practical effect to the entire act over one which renders part of it meaningless or useless."[33]

We find the path to the solution to this apparent conundrum clearly blazed by the Civil Code articles on interpretation of laws.[34] Article 9 instructs that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written...."[35] R.S. 9:5644 fails the test of Article 9. The absurd consequences of a literal interpretation may be avoided by an *in pari materia* reading of laws on the same subject matter.[36] Having determined that the "prescriptive period provided in R.S. 9:5644" refers to Article 3492 or 3493, we achieve a reasonable result which gives meaning to the suspension and revival aspects of R.S. 9:5644 and the relevant prescriptive periods.

Concluding that Trizec's cause of action was prescribed by applicable Code articles at the time of the effective date of La.R.S. 9:5644, Trizec had, at the very most, until Sept. 6, 1986 to exercise

---

[33]*Reed v. Washington Parish Police Jury,* 518 So.2d 1044 (La.1988) (citations omitted).

[34]La.Civ.Code arts. 9–13 (1987).

[35]*Ramirez v. Fair Grounds Corp.,* 575 So.2d 811 (La.1991).

[36]La.Civ.Code art. 13.

the revival grant of R.S. 9:5644(C). Trizec filed suit more than four years later. We therefore conclude that Trizec's complaint was prescribed when filed and that the revival provision of La.R.S. 9:5644(C), assuming *per arguendo* its applicability, provides no surcease.[37]

The judgment of the district court is AFFIRMED.

---

[37]We note but do not reach the question of whether R.S. 9:5644(C) is peremptive. La.Civ.Code art. 3458 (1982).