687 So.2d 84 (1997)
CAMERON PARISH SCHOOL BOARD
v.
ACANDS, INC., et al.
No. 96-CA-0895.
Supreme Court of Louisiana.
January 14, 1997.
Opinion January 31, 1997.
Rehearing Denied February 21, 1997.
Robert C. McCall, William B. Baggett, Erin McCall Alley, Lake Charles, for Applicant.
Frederick L. Cappel, Joe A. Brame, Lake Charles, David Robert Kelly, Cullen John Dupuy, Baton Rouge, Jerry D. Kirk, Richard P. Ieyoub, Attorney General, Carlos Miguel *85 Finalet, III, Baton Rouge, Drew Averill Tanier, Lake Charles, for Respondent.
Mike Gertler, New Orleans, for Orleans Parish School Board, Amicus Curiae.
Kenneth Francis Sills, Baton Rouge, for East Baton Rouge Parish School Board, St. Parish School Board, Evangeline Parish School Board, Natchitoches Parish School Board, Amicus Curiae.
Jack Ashton Grant, Gretna, for Jefferson Parish School Board & Lafourche Parish School Board, Amicus Curiae.
Thomas A. Rayer, New Orleans, for Roman Catholic Church, Archdiocese of New Orleans, and Various Catholic Schools, Amicus Curiae.
Robert C. McCall, Lake Charles, for Acadia Parish School Board, Allen Parish School Board, Calcasieu Parish School Board, Iberia Parish School Board, Jefferson Davis Parish School Board, Lafayette Parish School Board, LaSalle Parish School Board, St. Martin Parish School Board, and Vermillion Parish School Board, Amicus Curiae.
Frederick Haydel Sutherland, Shreveport, for Caddo Parish School Board, and Webster Parish School Board, Amicus Curiae.
James Charles Gulotta, Jr., Karen H. Freese, New Orleans, for W. R. Grace & Co. Connecticut, Amicus Curiae.
Opinion by Justice Bleich Filed January 31, 1997.
KIMBALL, Justice.[*]

ISSUE
La. R.S. 9:5644, relative to prescription of actions involving asbestos abatement, was declared unconstitutional by a trial court under Art. I, Sec. 2 of the Louisiana Constitution of 1974 insofar as it purports to revive already prescribed causes of action. More specifically, the trial court held defendant T & N plc's ("T & N") right to assert an exception of prescription, once accrued, is a vested right. As such, the trial court held, La. R.S. 9:5644 can not, consistent with due process, take away T & N's right to assert such an accrued exception by retroactively reviving the cause of action as to which prescription has already accrued. Pursuant to La. Const. Art. 5, Sec. 5(D), plaintiff Cameron Parish School Board ("the Board") brought this direct appeal to this court. Finding first, that the Board's claim has prescribed under the law existing prior to the enactment of La. R.S. 9:5644, and second, that La. R.S. 9:5644 does not contain a clear and unequivocal expression of intent by the legislature to retroactively apply the statute so as to revive prescribed causes of action, we find it unnecessary to address the constitutional issue ruled upon by the district court. We therefore vacate the ruling of the district court and dismiss the matter as prescribed.

FACTS AND PROCEDURAL HISTORY
On February 11, 1993, the Board filed suit against several defendants, including T & N, seeking, inter alia, recovery of costs for the removal of asbestos material used in the construction of three of the Board's school buildings. T & N, named by the Board as the manufacturer of the asbestos materials used in the Board's school buildings, filed a peremptory exception of prescription which, after a hearing, was granted by the trial court.
On appeal, the Board, relying on La. R.S. 9:5644,[1] argued that its suit was timely filed *86 and that the trial court had therefore erred in granting T & N's exception of prescription. In considering the Board's appeal, the third circuit found the following dates pertinent to the exception of prescription had been established by the evidence adduced in the trial court:
1. On November 9, 1981, the Board passed a resolution seeking bids for the removal of asbestos at Grand Lake High School.
2. On March 18, 1982, the Board accepted a bid for the removal of asbestos at Grand Lake High School.
3. On June 10, 1982, the asbestos removal at Grand Lake High School was completed.
4. On January 17, 1983, a class action lawsuit was brought in the United States District Court for the Eastern District of Pennsylvania on behalf of every school board in the United States against the various manufacturers of asbestos seeking to recover costs and damages incurred by the plaintiff class in connection with asbestos abatement work in school buildings. T & N was named as a defendant in this lawsuit.
5. On July 27, 1983, the Board accepted a bid for the removal of asbestos at Cameron Parish Elementary and Hackberry High School.
6. On September 6, 1983, the asbestos removal at Cameron Elementary and Hackberry High School was completed.
7. La. R.S. 9:5644 became effective on September 6, 1985.
8. On November 30, 1987, the Board "opted out" of the class action lawsuit.
9. On August 31, 1988, the Board, along with other school governing authorities throughout the State of Louisiana, filed suit against a number of manufacturers of asbestos in the United States District Court for the Eastern District of Louisiana.
10. On June 30, 1989, T & N was added as a defendant in the suit in the United States District Court for the Eastern District of Louisiana.
11. T & N was dismissed as a defendant in the suit in the United States District Court for the Eastern District of Louisiana on January 9, 1991, without prejudice, based on a stipulation that T & N waived any prescription-based defense which had not already accrued.
12. On February 11, 1993, the instant suit was filed in the 38th Judicial District Court, Parish of Cameron, State of Louisiana.
Cameron Parish School Board v. Acands, Inc., 94-545, p. 2 (La.App. 3rd Cir. 11/02/94), 646 So.2d 976, 978. Agreeing with the trial court that prescription on the Board's claims began to run no later than November 9, 1981, the date on which the Board sought bids for the removal of asbestos from Grand Lake High School, the court of appeal also found that the doctrine of contra non valentem was inapplicable to the Board's claims because the Board "failed to timely make any reasonable effort to ascertain the identity of the manufacturer." Id. at p. 5, 646 So.2d at 979. Finding the one year prescriptive period contained in La. C.C. art. 3492 applicable to the Board's claims, the court of appeal also agreed with the trial court's finding that the Board's claims had prescribed before the class action suit was filed in Pennsylvania on January 17, 1983. Id. at p. 6, 646 So.2d at 979-80.
However, despite its finding that the Board's claims had clearly prescribed under La. C.C. art. 3492, the court of appeal reversed the trial court's granting of T & N's exception, holding that Subsection C of La. R.S. 9:5644 was prescriptive in nature and operated retroactively to revive the Board's prescribed cause of action. Id. at pp. 6-8, 646 So.2d at 980-81. In this regard, the court of appeal, using the above described pertinent dates, found: (1) the Board was a member of the plaintiff class in the Pennsylvania class action suit at the time La. R.S. 9:5644 became effective; (2) Section C of La. *87 R.S. 9:5644 applied to already-prescribed causes of action such that plaintiff's cause of action for asbestos abatement damage was revived by the statute; (3) the pendency of the class action suit suspended or interrupted the one year prescriptive period contained in La. R.S. 9:5644(C) until the Board opted out of the class action suit on November 30, 1987; (4) the Board timely filed suit against T & N on August 31, 1988 in United States District Court for the Eastern District of Louisiana, well within one year of opting out of the class action suit; and (5) the suit in United States District Court for the Eastern District of Louisiana served to interrupt prescription against T & N until the instant suit was filed on February 11, 1993. Id. The court of appeal, specifically recognizing that "a defendant's right to assert the peremptory exception of prescription is a vested right," noted that none of the parties to this suit had questioned the constitutionality of La. R.S. 9:5644. Id. at p. 4, 646 So.2d at 979. The court therefore "gave effect to the statute as written" and remanded the case to the trial court for further proceedings. Id. at pp. 6-8, 646 So.2d at 980-81. T & N's application for review in this court was denied. Cameron Parish School Board v. Acands, Inc., 95-0427 (La.3/20/95), 651 So.2d 846.
On remand in the trial court, T & N filed a pleading styled "Peremptory Exceptions of Unconstitutionality of Statute and Prescription," alleging La. R.S. 9:5644, insofar as it has the effect of reviving previously prescribed claims, violates both the United States and Louisiana Constitutions' guarantees of procedural and substantive due process and equal protection, constitutes a "prohibited law" in violation of Art. I, Sec. 23 of the Louisiana Constitution of 1974, and further constitutes a "special law" in violation of Art. III, Sec. 12 of the Louisiana Constitution of 1974. After a hearing on the exception, the trial court, relying on the court of appeal's statement in the instant case that "a defendant's right to assert the peremptory exception of prescription is a vested right" and this court's decision in Lott v. Haley, 370 So.2d 521, 523 (La.1979)("Statutes of limitation are remedial in nature and as such are generally accorded retroactive application...." However, "procedural and remedial laws are not accorded retroactive effect where such retroactivity would operate unconstitutionally to disturb vested rights...."), held La. R.S. 9:5644 unconstitutional as a violation of due process insofar as it purports to revive the Board's prescribed cause of action against T & N. The trial court therefore granted T & N's exception and dismissed the Board's suit. Pursuant to Art. 5, Sec. 5(D), the Board has appealed the trial court's declaration of the unconstitutionality of La. R.S. 9:5644 and its dismissal of the Board's suit.

DISCUSSION
This court does not generally reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case. White v. West Carroll Hospital, Inc., 613 So.2d 150, 157 (La.1992). In the instant case, it is not necessary to reach any constitutional issues unless: (1) the Board's claims were in fact prescribed prior to the enactment of La. R.S. 9:5644; (2) La. R.S. 9:5644 revives claims as to which the prescriptive period has already elapsed; and (3) if La. R.S. 9:5644 does revive such prescribed claims, the Board's claim in the instant case is not prescribed under that statute.
In this regard, this court has the authority, as a matter of Constitutional law and civil procedure, to determine the correctness of the lower court's decisions regarding each of these issues and, hence, T & N's initial exception of prescription, even though this court previously denied T & N's writ application on these issues. See Cameron Parish School Board v. Acands, Inc., 95-0427 (La.3/30/95), 651 So.2d 846. This is so because our denial of T & N's writ application was no more than the denial of an application for review of an interlocutory ruling, i.e., the denial of an exception of prescription, and not the denial of an application to review a final judgment on the merits. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971); see also Twin Parish Port Comm'n v. Berry Bros., Inc., 94-2594 (La.2/20/95), 650 So.2d 748 (when a statute is declared unconstitutional, this court's jurisdiction extends to *88 all issues, constitutional or otherwise, involved in the civil action before it); compare Rivet, Et Al. v. State, DOTD, 96-0145 (La.9/05/96), 680 So.2d 1154.
Prescription Prior to the Enactment of La. R.S. 9:5644
On T & N's initial exception of prescription, the district court noted in his reasons for judgment that the Board's petition states "it became extremely concerned about the health hazard the asbestos posed to the faculty, students, and other people exposed to it at Grand Lake High School, Cameron Elementary School, and Hackberry High School" in "early 1982." Determining, therefore, that "[o]n the face of its petition, the plaintiff had knowledge of the asbestos and the need for its abatement in 1982 ...," such that the claim was prescribed, the district court examined whether there was any basis for suspension or interruption of the one year prescriptive period contained in La. C.C. 3492:
An inquiry with the building contractor, the architect, or the project engineer, would have disclosed the manufacturer of the asbestos product. If not further inquiry would have been warranted. The plaintiff does not show any of these efforts were made.
Trial Court Reasons for Judgment, p. 2. Because, in the district court's view, the Board's claim was prescribed on the face of its petition and the Board had failed to show it had made any effort to ascertain the identity of the manufacturer of the asbestos product at issue, the court sustained T & N's exception of prescription.
On appeal by the Board, the court of appeal, in pertinent part, found:
After a careful review of the record, we can find no clear error in the trial court's conclusion that prescription began to run no later than November 9, 1981, i.e., the date on which the Board sought bids for removal of asbestos in one of its schools. Clearly, the Board's action on that date demonstrates its awareness of the asbestos problem in the school buildings and the need for its removal. Its cause of action had accrued by this date. Further, our review of the record convinces us that the trial judge was correct in his statement in his written reasons that the plaintiff failed to timely make any reasonable effort to ascertain the identity of the manufacturer. Hence, plaintiff's unwarranted inaction under the circumstances cannot form the basis for suspending the running of prescription under the contra non valentem doctrine.
In sum, we find no clear error in the trial court's conclusion that the Board's claim against T & N had prescribed when the Pennsylvania class action suit was instituted on January 17, 1983.
Cameron Parish School Bd. v. Acands, Inc., 94-545 (La.App. 3rd Cir. 11/02/94), 646 So.2d 976, 979-80. The court of appeal therefore affirmed the district court's determination that the Board's claim had prescribed prior to the enactment of La. R.S. 9:5644, though, as previously explained, the court of appeal further determined La. R.S. 9:5644 nevertheless revived the Board's already prescribed cause of action. Id. at p. 8, 646 So.2d at 981.
Though prescription under La. C.C. art. 3492 begins to run from the day injury or damage is sustained, damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. Cole v. Celotex Corp., 620 So.2d 1154, 1156 (La.1993). As this court stated in Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987):
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.... When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.
The question, therefore, is whether, in light of the information known, a plaintiff was reasonable to delay in filing suit. Cole, 620 So.2d at 1156 (citing Knaps v. B & B Chemical *89 Co., Inc., 828 F.2d 1138, 1140 (5th Cir. 1987)). While we further noted in Cole that "[i]t is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription ...," our review of the record in the instant case reveals no such problem. In the instant case, the Board, sufficiently aware of the hazards posed by the continuing presence of asbestos in its school buildings, decided on November 9, 1981, to seek bids for the removal of the asbestos at one of its schools. At this point in time, the Board clearly was aware it had asbestos in at least some of its buildings, the asbestos posed a serious health problem to its employees and students, the problem was severe enough to warrant immediate removal of the material, and the removal of the material would cost the Board a significant amount of money. Though "[t]he damage suffered must at least be actual and appreciable in qualitythat is, determinable and not merely speculative ... there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action." Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992). Furthermore, though the Board decided to seek bids for the removal of the asbestos on November 9, 1981, thereby acknowledging for prescription purposes that it had been damaged and was sufficiently on notice of that damage, it thereafter took no action whatsoever during the following year to even attempt ascertain the identity of the manufacturer of the asbestos. In light of its inaction, the Board cannot now rely on any alleged inability to identify the manufacturer to avoid prescription. See, e.g., Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206 (Prescription does not run or accrue "against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not wilful, negligent or unreasonable." Id. at pp. 9-10, 635 So.2d at 212 (emphasis added)); Jordan, 509 So.2d at 423 ("[A] plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury."); Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319, 1322 (La. 1979)("[A] plaintiff will be deemed to know what he could by reasonable diligence have learned.").
The Board's cause of action, having accrued no later than November 9, 1981, was therefore clearly prescribed prior to the filing of the Pennsylvania class action on January 17, 1983, and the filing of that action can have no effect on the Board's claims under the law existing prior to the enactment of La. R.S. 9:5644. As such, the Board's cause of action had also clearly prescribed prior to September 6, 1985, the effective date of La. R.S. 9:5644.
La. R.S. 9:5644
The next issue to be decided in this case is whether La. R.S. 9:5644 operates to revive claims as to which the prescriptive period has already run, for if it does not, there is no need in the instant case to reach any constitutional issue. The test for determining whether the legislature intended an Act to revive prescribed causes of action was recently explained by this court in Chance v. American Honda Motor Co., Inc., 93-2582 (La.4/11/94), 635 So.2d 177.
In Chance, the issue presented was "whether the legislature intended the amendment to Louisiana Civil Code article 3492 to revive prescribed causes of action." Id. at p. 2, 635 So.2d at 178. Noting the well established principle of statutory construction that "prescriptive periods relate to the remedy and are therefore treated as procedural laws and applied retroactively," we additionally noted in Chance that "the revival of an already prescribed claim presents additional concerns ..." because a change in the right to plead prescription, once acquired, "constitutes a substantive change in the law as applied to the defendant." Id. Guided by the principles established in La. C.C. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is legislative expression to the contrary."), this court, characterizing the legislative revival of prescribed causes of action as "an extreme exercise of legislative power," held that, at the very least, a clear and unequivocal expression of intent by the legislature would be required before this *90 court would so interpret the legislative intent behind a statute. Id. Finding no such clear expression of legislative intent in the amendment to La. C.C. 3492 at issue, we declined in Chance to apply the amendment retroactively to revive an already prescribed cause of action, specifically noting the lack of necessity to reach the issue of whether the legislature has the authority to revive prescribed causes of action. Id. at 179 n. 6.
In the instant case, neither the trial court nor the court of appeal, respectively, on trial and review of T & N's initial exception of prescription, explicitly applied Chance in determining whether the legislature intended La. R.S. 9:5644 to revive prescribed causes of action for asbestos abatement damages. Nevertheless, it is clear the court of appeal implicitly made such a determination, as it stated "[t]he obvious purpose of La. R.S. 9:5644 C was to revive any previously prescribed cause of action for asbestos abatement damages...." Cameron Parish, 94-545 at p. 8, 646 So.2d at 981.[2]
In our view, however, beyond the intent of the legislature in La. R.S. 9:5644 to alter the prescriptive period for causes of action for asbestos abatement, nothing is "obvious." La. R.S. 9:5644(B) and (C) state:
B. Notwithstanding any other provision of law to the contrary, any time limitation or prescriptive period which may be applicable to any action to recover for asbestos abatement work shall not apply or expire until five years after the date on which the party seeking to recover has completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later.
C. Any person who has an action to recover for asbestos abatement work under the provisions of this Section but whose action is barred by the prescriptive period provided in R.S. 9:5644 shall have one year from the effective date of this Act within which to bring an action or be forever barred.
By its own terms, Subsection B applies to "any action" to recover for asbestos abatement, and specifically addresses itself to "any time limitation or prescriptive period which may be applicable," declaring that such periods shall not apply. Again, by its own terms, Subsection C grants any person whose cause of action is barred by the newly enacted and applied prescriptive terms of Subsection B an additional year beyond the effective date of the Act, (September 6, 1985) to bring an action. While, in accordance with the general rules enunciated in Chance, Subsections B and C clearly apply retroactively to causes of action which arose prior to the date of its enactment and as to which the applicable prescriptive period had not yet accrued, we cannot agree the legislature, merely by directing that the statute applies to "any action," thereby evidenced an intent to revive causes of action which have already prescribed. Though such causes of action have never been judicially pronounced as prescribed, such that the legislature's use of the phrase "any action" could ostensibly be construed to mean the legislature intended to revive already prescribed causes of action, such phrasing is far from "a clear and unequivocal expression of intent by the legislature." Chance, 635 So.2d at 178. In this regard, we note that the legislature has employed the same or similar wording in several other unrelated statutes. See, e.g., La. R.S. *91 9:5604; 9:5605; 9:5624; 9:5629; 9:5632; 9:5641; 9:5681; 9:5682. Though we do not purport to decide herein whether or not the legislature intended for any of these statutes to revive already prescribed causes of action, we find such liberal use by the legislature of the word or phrases "action," "any action," "all actions," and "any and all actions" in these prescriptive statutes supportive of our determination that the legislature, in using such wording in the statute at issue herein, has not clearly and unequivocally expressed an intent to revive an already prescribed cause of action for abatement of asbestos in La. R.S. 9:5644.
Furthermore, as in Chance, the purported revival effect of the statute, as opposed to retroactive application of the statute to causes of action which have not already prescribed, presents additional concerns. We therefore "require, at the very least, a clear and unequivocal expression of intent by the legislature for such an `extreme exercise of legislative power.'"[3]Chance, 635 So.2d at 178. La. R.S. 9:5644, however, contains neither an explicit nor implicit expression of any such intent.
First, the language used in the statute does not contain any reference to revival of prescribed claims. Moreover, the legislative history of this statute gives no indication of any intent on the part of the legislature that this statute should apply to revive causes of action which had already prescribed under the law existing prior to the statute's enactment. Senate Bill No. 1044, the bill by which La. R.S. 9:5644 was enacted, was introduced in both the committee hearings and on the floor of the legislature as follows:

AN ACT
To enact R.S. 9:5644, relative to asbestos abatement; to provide for the prescription period of actions involving asbestos abatement; and to provide for related matters.
In committee hearings on the bill, the minutes contain the following:
S.B. No. 1044 by Senator Jefferson
Senator Jefferson presented this bill which provides that the prescriptive period for actions involving asbestos abatement are barred by a prescription period of five years after the date on which the party seeking to recover has completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later. The bill further provides that asbestos abatement includes removal of asbestos or materials containing asbestos from any building; other measures taken to detect, correct or ameliorate any problem related to asbestos in a building; or reimbursement for the removal, correction, or amelioration of asbestos or materials containing asbestos. The bill provides that actions to recover for asbestos abatement work which would otherwise be barred as a result of the five year prescriptive period shall have one year from the effective date of this Act within which to file their action.
S.B. No. 1044 by Senator Jefferson was amended only once, to add Subsection D relative to exempting worker's compensation prescriptive periods from the effect of the statute. Otherwise, the bill passed in the present form of the statute with no relevant record discussion and no indication the legislature intended the measure to revive already prescribed causes of action.
Second, it is clear the legislature, when it intends to do so, is fully capable of expressing its intent to revive an already prescribed cause of action. For example, Acts 1993, No. 32, which enacted La. R.S. 9:305, states, in pertinent part:
To enact R.S. 305, relative to disavowal actions; to suspend the time within which to institute such action in child support *92 cases wherein the husband was deceived; to provide for retroactive application; to provide that the provisions hereof are severable; and to provide for related matters.
Be it enacted by the Legislature of Louisiana:
Section 1. R.S. 9:305 is hereby enacted to read as follows:
§ 305. Disavowal of paternity; ancillary to child support proceeding
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
Section 2. The provisions of this Act shall be applied retrospectively such that a husband or legal father who, because of the mother's misrepresentation, fraud, or deception, erroneously believed he was the father of a child, and whose action for disavowal has prescribed, may institute such an action ancillary to any child support proceeding brought within one hundred eighty days of the effective date hereof, and any such suit not instituted within that time and any claims relating thereto shall be forever barred. (Emphasis added).
This sort of "clear and unequivocal" intent on the part of the legislature is simply not found in La. R.S. 9:5644.
Third, La. R.S. 9:5644(B) both increased the time period for the bringing of asbestos abatement claims against certain defendants, such as manufacturers, who had previously enjoyed the benefit of a one year prescriptive period under La. C.C. arts. 3492 and 3493, and shortened the time period for the bringing of claims against other defendants, such as architects and contractors, who had previously enjoyed the benefit of a ten year prescriptive period under La. C.C. art. 3500. As such, the most plausible explanation for Subsection C's providing for an additional one year period for the filing of actions "barred by the prescriptive period provided in R.S. 9:5644" is not that the legislature thereby intended to revive an already prescribed cause of action, but that, consistent with this court's decision in Lott v. Haley, 370 So.2d 521 (La.1979), the legislature simply intended to provide an additional period of time for claims to be brought which would, absent this provision, have been immediately barred by the terms of statute on the date it took effect.[4] In this regard, it is also worth noting that Subsection C straightforwardly provides that the one year period for the filing of any such claims will only be applicable where such claims are "barred by the prescriptive period provided in R.S. 9:5644 ...," rather than providing that the one year period will be applicable where such claims are, for example, "otherwise barred," "otherwise prescribed," or "barred by any prescriptive period." See, e.g., Chance, 635 So.2d at 179 n. 5 (citing La. R.S. 9:5625's giving one year from the effective date of the act for parties to bring an action that is otherwise prescribed.). In the instant case, the Board's claims are not simply prescribed by the prescriptive period provided in La. R.S. 9:5644 but, instead, were prescribed for nearly three years before the enactment of La. R.S. 9:5644, and nothing in the statute evidences a "clear and unequivocal intent" on the part of the legislature to revive such prescribed claims.
Finding no "clear and unequivocal" expression of intent by the legislature to revive claims as to which prescription has already accrued, we decline, in accordance with Chance, to so apply the statute.

*93 CONCLUSION
Because we have determined La. R.S. 9:5644 contains no clear and unequivocal expression of legislative intent to revive causes of action as to which prescription had already accrued under the law which existed prior to the enactment of that statute, the trial court's ruling of unconstitutionality, along with the court of appeal's reversal of the trial court's granting of T & N's exception of prescription on original hearing, are vacated, and the trial court's granting of T & N's exception of prescription on original hearing is reinstated. Furthermore, having found the required intent on the part of the legislature absent here, it is not necessary to determine whether the Board's claims would be prescribed under La. R.S. 9:5644, if it applied to revive already prescribed causes of action, or to reach the constitutional issue of whether the legislature has the authority to revive prescribed causes of action. See White v. West Carroll Hospital, Inc., 613 So.2d 150, 157 (La.1992).

DECREE
RULING OF UNCONSTITUTIONALITY VACATED; EXCEPTION OF PRESCRIPTION GRANTED; DISMISSED.
BLEICH, J., concurs in part and dissents in part and assigns in reasons.
LEMMON, J., dissents and assigns reasons.
JOHNSON, J., dissents.
LEMMON, Justice, dissenting.
The legislative purpose of La.Rev.Stat. 9:5644, by its terms, appears clear to me. That purpose was to make any prescriptive period, which would otherwise be applicable to bar an action for recovery of asbestos treatment work, inapplicable until five years from the later of the completion of the work or the discovery of the identity of the manufacturer. The intent of the words "apply or expire" in Subsection 5644 B was:
1. Any prescriptive period that has already run does not apply, and the minimum five-year prescriptive period established by Subsection 5644B controls; and
2. Any prescriptive period that has not already run does not expire until, at earliest, the end of the five-year prescriptive period established by Subsection 5644B.[1]
Moreover, in those cases in which five years had already elapsed from the completion of the abatement work and the discovery of the identity of the manufacturer before Section 5644 became effective, Subsection 5644 C provided an additional one year to file suit. In this latter situation, it is obvious that both the five-year prescriptive period of Section 5644 and any shorter prescriptive period had already run, and the Legislature clearly intended to revive this prescribed cause of action.
I would therefore proceed to address the difficult constitutional issue.
BLEICH, Justice, concurring in part and dissenting in part.
I concur in the majority's opinion insofar as it finds that La. R.S. 9:5644 contains no clear and unequivocal expression of legislative intent to revive causes of action as to which prescription had already accrued under the law which existed prior to the enactment of that statute. However, I disagree with the majority's conclusion that the board's claim is prescribed under the existing law. Under the doctrine of contra non valentem agere nulla currit praescriptio, prescription does not run when the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979).
In the instant case, even though the board took steps to remove the asbestos in 1981, the identity of the manufacturer of the asbestos was not determined at that time. Identification *94 of the manufacturer is dependent upon complex laboratory analysis of the formulas of the asbestos products. Therefore, I would find that under the facts of this case, the board did not know of its cause of action against T & N, as manufacturer of the asbestos, until the class action was filed in 1983.
Accordingly, I respectfully dissent as to that portion of the majority's opinion finding the board's suit was prescribed.
NOTES
[*] Watson, J., not on panel. Rule IV, Part 2, § 3. RECUSED.

Bleich, J., dissents and will assign reasons.
Lemmon, J., dissents and assigns reasons.
Johnson, J., dissents.
[1] La. R.S. 9:5644 provides:

§ 5644. Prescription of actions involving asbestos abatement
A. Asbestos abatement shall include any of the following:
(1) The removal of asbestos or materials containing asbestos from any building.
(2) Any other measures taken to detect, correct, or ameliorate any problem related to asbestos in a building.
(3) Reimbursement for the removal, correction, or amelioration of asbestos or materials containing asbestos.
B. Notwithstanding any other provision of law to the contrary, any time limitation or prescriptive period which may be applicable to any action to recover for asbestos abatement work shall not apply or expire until five years after the date on which the party seeking to recover has completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later.
C. Any person who has an action to recover for asbestos abatement work under the provisions of this Section but whose action is barred by the prescriptive period provided in R.S. 9:5644 shall have one year from the effective date of this Act within which to bring an action or be forever barred.
D. Nothing in this Section is intended to nor shall it have the effect of changing in any respect the applicable prescription periods fixed by law for benefits under the worker's compensation law for claims for damages due to asbestos related injury or disease.
[2] We note that while several federal courts have been presented with this same issue, those courts have reached different conclusions. See Trizec Properties, Inc. v. U.S. Mineral Products, 974 F.2d 602 (5th Cir.1992)(concluding neither La. R.S. 9:5644(B) or (C) may be applied retroactively to revive an already prescribed cause of action, and stating, inter alia: "This subsection [La. R.S. 9:5644(C)] is far from a model of clarity...." Id. at 607; "This section [La. R.S. 9:5644(B)] contains no language of revival of an expired (i.e. prescribed) cause of action...."; "There is no express statement of retroactivity in R.S. 9:5644...." Id. at 606, n. 28); Orleans Parish School Bd. v. U.S. Gypsum Co., 892 F.Supp. 794 (E.D.La.1995)(currently on appeal to the United States Court of Appeals, 5th Circuit)(relying on Trizec, supra, summary judgment motion in favor of defendant granted and plaintiff's claims dismissed as prescribed); City of New Orleans v. W.R. Grace & Co.Conn., Civ.A.No. 92-5, 1992 WL 125371 (E.D.La.5/21/92), aff'd. in unpublished opinion, 985 F.2d 558 (5th Cir.1993) (granting summary judgment in favor of defendant dismissing plaintiff's claims as prescribed, stating, inter alia: "I agree that the asbestos statute in question is specific in its retroactive application....").
[3] As we explained in Chance, 635 So.2d at 178 n. 4:

Justice Cardozo, writing for the Court of Appeals of New York, made the following observation when faced with this issue:
Revival is an extreme exercise of legislative power. The will to work it is not deduced from words of doubtful meaning. Uncertainties are resolved against consequences so drastic.
Hopkins v. Lincoln Trust Co., 233 N.Y. 213, 135 N.E. 267, 267 (1922).
[4] For example, if, on the effective date of La. R.S. 9:5644, a plaintiff possessed a claim against an architect or contractor as to which seven years of the preexisting prescriptive period had already elapsed, absent Subsection C's granting of an additional year for a plaintiff to file a claim that claim would be prescribed simply by virtue of La. R.S. 9:5644 taking effect. In our view, the legislature, following this court's directive in Lott, simply provided in Subsection C for an additional one year period for the filing of any such claim.
[1] I also disagree that the Legislature intended to shorten any unexpired prescriptive periods that are more than five years, which the majority postulates as an explanation of Subsection 5644 C's additional one-year period.