**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 18, 2009

Charles R. Fulbruge III
Clerk

No. 06-31111

KIKI IKOSSI-ANASTASIOU,

Plaintiff–Appellant,

v.

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY,

Defendant–Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Kiki Ikossi-Anastasiou (Ikossi) appeals from the district court's grant of summary judgment to Louisiana State University (LSU). We affirm in part, reverse in part, and remand for further proceedings.

**I**

Ikossi was a professor at LSU beginning in 1990 and a tenured professor beginning in 1996. During much of this time, she believed she was subjected to unlawful sex discrimination. Ikossi complained of her treatment on many occasions and filed formal grievances against several male colleagues in 1995.

For the 1997-1998 academic year, Ikossi requested and was granted a one-year sabbatical leave. During this leave, her sabbatical agreement required LSU

to pay her half of her regular salary and benefits. Her work on sabbatical included research with the Naval Research Laboratory.

In April 1998, while on sabbatical, Ikossi again filed grievances against several male faculty members, alleging sex discrimination and other complaints. In August 1998, after her sabbatical ended and as the new academic year was about to begin, Ikossi exchanged several letters with LSU. First, Ikossi sent a letter to Dr. Alan Marshak, her department chair, requesting "personal leave" of unspecified length, "in order to care for a member of [her] family with a health condition." Ikossi appears to have submitted standard forms further specifying the nature of the leave she was requesting, but those forms are not in the record. Later documents indicate that Ikossi's son was ill and residing out of state.

Ikossi apparently received a letter approving twelve weeks of leave under the Family Medical Leave Act (FMLA) from Marian Caillier, a human resources manager at LSU, although that letter is not in the record. Ikossi replied to Caillier acknowledging that her twelve-week FMLA leave would end mid-semester and that "to facilitate the department teaching plans" she would need additional leave. Caillier replied, acknowledging the receipt of forms requesting additional unpaid leave and stating that Marshak was only willing to approve additional unpaid leave through the end of the Fall 1998 semester because the department was "short of faculty" and "facing an enormous teaching load." Caillier concluded: "Your request for leave for the 1999 Spring Semester [beginning January 1999] is denied. Therefore, you are required to return to your assigned duties for the 1999 Spring Semester." There was no further correspondence between Ikossi and anyone from LSU for five months.

Ikossi exchanged several letters with LSU personnel in January 1999. Shortly before the start of the spring semester Ikossi sent Caillier another request for unpaid leave "for the rest of the academic year." Caillier reminded Ikossi that her request had already been denied and explained that if Ikossi did

not resume her teaching duties, LSU would assume that she had "abandoned [her] position." Ikossi then sent a letter to Marshak indicating that she would not return for the spring semester and that she had "every intention of fulfilling [her] University responsibilities but [her] personal situation" required postponing those duties. She concluded with a request for personal leave without pay.

Shortly thereafter Ikossi sent another letter to Caillier explaining that she was not abandoning her position, but merely requesting leave without pay. She stated that the denial of her request was "nothing more than a progression of disparate treatment." She concluded, "I expect my request to be forwarded to the appropriate higher University authority for an impartial review." Ikossi also wrote to Dr. Daniel Fogel, Executive Vice-Chancellor and Provost and asked him to "re-examine[]" her leave request.

In late January 1999, Forest Benedict, Associate Vice Chancellor of LSU, sent a letter to Ikossi in which he explained that her leave had been denied in August, that the denial had been reiterated in January, and that because she had failed to return to work at the start of the semester, she had abandoned her position. Benedict also told Ikossi that LSU had learned that she had accepted a full-time position with the U.S. Navy, commencing the fall of 1999. Benedict reminded Ikossi that her sabbatical agreement included a clause prohibiting her from accepting a full-time position elsewhere until having worked for LSU a full year post-sabbatical. Benedict told Ikossi that LSU would determine how much reimbursement Ikossi owed in light of her breach of the sabbatical agreement.

Ikossi wrote Benedict in early February disputing the accusation that she had accepted a permanent position with the Navy. She wrote that Benedict's office never addressed any of Ikossi's past complaints about discrimination and that Ikossi considered Benedict's earlier letter "further indication of the disparate treatment" she had endured for eight years. The next communication

between Ikossi and LSU in the record is an August 1999 letter from LSU's law firm to Ikossi's lawyer stating that Ikossi had only a small amount of time to settle her claims against LSU (apparently the claims that constitute the instant case) in exchange for LSU dropping its demand for $42,907.79 of sabbatical pay.

Ikossi filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on a standard questionnaire form. The EEOC issued a right-to-sue letter in August 2000. Ikossi brought this suit in November 2000, alleging violations of Title VII (both discrimination and retaliation), Title IX, the Louisiana Employment Discrimination Law, and the Equal Pay Act. LSU moved for summary judgment, arguing that all claims were time-barred. The district court agreed and granted summary judgment to LSU on all claims, and Ikossi appealed.

## II

Ikossi argues that the district court erred in its analysis of the applicable limitations periods for all of her claims except the Title IX claim, which she does not challenge. We review the district court's grant of summary judgment de novo, using the same standard as the district court.[1] Summary judgment is properly granted only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law.[2]

## III

It is unlawful under Title VII of the Civil Rights Act of 1964 for an employer to discriminate on the basis of sex.[3] A plaintiff may bring a claim for discrimination under Title VII only if she has filed a claim with the EEOC within 180 days of the alleged unlawful act, or within 300 days if the plaintiff

---

[1] *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994).

[2] F ED. R. CIV. P. 56(c).

[3] *See* 42 U.S.C. § 2000e-2.

first filed a complaint with a state or local agency.[4] The parties do not dispute that the 300-day period is applicable in this case. Ikossi filed her EEOC complaint on September 16, 1999, so her claims are timely only if the alleged unlawful acts took place on or after November 20, 1998.

The district court held that an unlawful act, if any, occurred no later than when LSU sent a letter in August 1998 that denied Ikossi's additional unpaid leave request. The district court reasoned that the alleged denial of unpaid leave based on Ikossi's sex, if true, would have amounted to unlawful discrimination. In the court's view, because Ikossi's subsequent discharge in January 1999 was an inevitable consequence of the denial of unpaid leave, the January letters were not themselves discrete acts of discrimination.

Ikossi argues that she was reasonable in failing to construe the August letter from Caillier as a notice of termination because (unlike the January letter) it said nothing about job abandonment. She cites the Supreme Court's decision in *Delaware State College v. Ricks* for the proposition that the limitations period begins when the employer makes its official position known to the plaintiff.[5] She argues that the August letter did not establish LSU's position that she would be terminated if she did not return to work in January. We disagree.

The Supreme Court held in *Ricks* that the limitations period began to run when the university *offered* the professor a terminal contract, not when the terminal contract expired and the professor was actually terminated.[6] The termination was a "delayed, but inevitable consequence" of the terminal contract and the professor was on explicit notice that he would be terminated at its

---

[4] *Id.* § 2000e-5(e)(1).

[5] *See Del. State Coll v. Ricks*, 449 U.S. 250, 262 (1980).

[6] *Id.* at 257-58.

expiration.[7] Similarly, in Ikossi's case, the August letter was a denial of *unpaid* leave and it required Ikossi to return to work. This letter put Ikossi on notice that she would be terminated if she failed to return to work in January. Thus, the discriminatory act (if any) was communicated to Ikossi in August, and the January letter confirming denial of her request was not a new act of discrimination.

Ikossi contends that the August letter "did not constitute LSU's official position" because her request had not been "decided upon" by the proper authority within LSU. She argues that neither Caillier nor Marsak had the authority to approve or deny leave of the length Ikossi requested. But this argument is inconsistent with Ikossi's original complaint. Paragraph 24 of her complaint states that she requested leave in August 1998, and "[t]he university granted the leave but only for twelve weeks, and insisted that she return and resume teaching in January 1999." This is a factual admission that the University—not an unauthorized agent—denied her request for unpaid leave in August 1998. Factual assertions in the complaint are "judicial admissions conclusively binding" on the plaintiff.[8] Ikossi reaffirmed the fact of LSU's August denial in a joint pretrial stipulation. Ikossi may not now argue that she had not received a denial from the University in August 1998.

Even if she were able to deny the admissions she made in her complaint and the joint pretrial stipulation, her argument is without merit. She cites a table from an LSU policy manual that assigns "Final Approval Authority" for one-semester leaves to the Vice Chancellor/Vice Provost. According to Ikossi, this demonstrates that her department chair, Marshak, lacked the power to "decide upon" her request for leave. But the table specifies the authority to

---

[7] *Id.*

[8] *Morales v. Dep't of Army*, 947 F.2d 766, 769 (5th Cir. 1991).

grant leave resides in the Vice Chancellor/Vice Provost. It does not say that a department chair has no authority to deny leave.

For these reasons, we reject Ikossi's argument that she was not given notice of LSU's official position until January 1999. Ikossi's Title VII discrimination claims are time-barred.

## IV

It is a violation of Title VII if employers retaliate against employees who complain about discrimination.[9] "In Title VII retaliation cases, the plaintiff must first make the following prima facie showing: '(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'"[10] The district court did not explicitly discuss the retaliation theory of Ikossi's Title VII claim, but dismissed all Title VII claims as time-barred, reasoning that all claims accrued on or before August 1998.

Ikossi argues that LSU's demand for repayment of her sabbatical salary was in retaliation for her complaint to Caillier alleging that LSU denied leave on the basis of her sex. Because LSU's demand for repayment occurred in January 1999, which was within the 300-day period prior to her filing of the EEOC complaint, she argues that her retaliation claim was timely. LSU does not challenge and we do not address whether Ikossi engaged in protected activity, whether the demand for repayment of salary constitutes an adverse employment action, or whether there was a causal link between the protected activity and the adverse action. LSU argues only that (1) the adverse acts occurred after the plaintiff was no longer an employee, and former employees are

---

[9] 42 U.S.C. § 2000e-3(a); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53 (2006).

[10] *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)) (alteration omitted).

not covered by Title VII, and (2) the demand for repayment was part of a settlement discussion and Federal Rule of Evidence 408 bars the admission of such evidence.

First, the Supreme Court rejected the argument that Title VII retaliation claims only apply to current employees in *Robinson v. Shell Oil Co.*[11] There, the Court held that the term "employee" in the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), included former employees, noting that limiting anti-retaliation protections to current employees would be destructive of the provision's primary purpose of "[m]aintaining unfettered access to statutory remedial mechanisms."[12] Thus, the fact that Ikossi was not employed at the time LSU made the demand for repayment is of no consequence.

Second, Rule 408 does not apply in this context. Rule 408 prohibits a party from introducing evidence of settlement negotiations when "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction."[13] The evidence of LSU's repayment demand was a letter that Forest Benedict, Associate Vice Chancellor, sent to Ikossi at the end of January. This is the same letter that stated that her failure to return to work meant she had abandoned her position. This letter is not part of any settlement negotiations and is not excluded under Rule 408.

Because the retaliatory act occurred within the 300-day window for filing an EEOC claim, Ikossi's retaliation claim as to the demand for repayment of her sabbatical salary is timely and the district court erred in granting summary judgment on that basis.

---

[11] 519 U.S. 337, 341-42 (1997).

[12] *Id.* at 346.

[13] F ED. R. EVID. 408(a).

**V**

Louisiana law prohibits employment discrimination based on sex.[14] The prescriptive period for such claims is one year.[15] Prior to July 1999, the prescriptive period under Louisiana law was suspended during state or federal administrative investigations for up to eighteen months.[16] In July 1999, the Louisiana legislature reduced the maximum length of that suspension period to six months.[17]

Ikossi filed her EEOC complaint in September 1999, after the maximum suspension period changed from eighteen to six months. The parties disagree as to which suspension period applies to Ikossi's claim. LSU argues that the six-month maximum suspension period applies and that, even if Ikossi's claim accrued as of January 1999, the prescription period including the maximum suspension period would have expired prior to Ikossi filing suit in November 2000. Ikossi argues the eighteen-month suspension period should apply to her claim, since that was the law in effect when the allegedly wrongful acts took place and her claim accrued. She argues that applying the six-month maximum would retroactively and impermissibly affect her vested property right in her claim.

In any event, we need not decide which suspension period applies here because Ikossi failed to file her EEOC complaint (and thereby trigger the suspension period) before the one-year prescription period expired. As discussed above, Ikossi's claims accrued as of August 1998. She did not file her complaint

---

[14] LA. REV. STAT. 23:301 *et seq.*

[15] LA. REV. STAT. § 23:303(D). A prescriptive period is the civil law equivalent of a common law statute of limitations. *Trizec Props., Inc. v. U.S. Mineral Prods. Co.*, 974 F.2d 602, 603 n.1 (5th Cir. 1992).

[16] LA. REV. STAT. 23:333 (1998).

[17] LA. REV. STAT. § 23:303(D).

with the EEOC until, at the earliest, September 1999. Because her one-year prescriptive period had expired before she filed her complaint, no suspension of the prescription period could have occurred and, accordingly, the maximum suspension period applicable is irrelevant. Ikossi's state-law claim is time-barred.

## VI

Ikossi's final claim arises under the Equal Pay Act,[18] which is part of the Fair Labor Standards Act (FLSA).[19] Claims under the FLSA, including Equal Pay Act claims, must be filed within two years after the cause of action accrues, or within three years if the alleged violation was "willful."[20] Ikossi argues that the three-year limitations period applies because LSU acted willfully.

An employer willfully violates the FLSA if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."[21] Because willfulness is a question of fact,[22] summary judgment in favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of willfulness.[23]

The only evidence Ikossi relied upon to establish willfulness before the district court was salary records for her academic department and copies of her 1995 and 1998 grievances. The salary records show that Ikossi was paid less than many of her male colleagues and that she received lower raises than many

---

[18] 29 U.S.C. § 206(d).

[19] 29 U.S.C. § 201 *et seq.*

[20] 29 U.S.C. § 255(a).

[21] *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

[22] *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993); *see Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990) (applying a clearly erroneous standard of review to the district court's finding of no willfulness).

[23] *See Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 674 (5th Cir. 1991).

of her male colleagues. The grievances refer to Ikossi's dissatisfaction with her salary and include a request from Ikossi that her salary be adjusted upward to the level of her male colleagues. However, the facts that Ikossi was paid less than many of her male colleagues and that LSU knew she was dissatisfied with this difference are not enough to raise a fact question as to whether LSU knew or recklessly disregarded that its pay scale was prohibited by the FLSA. Ikossi has not provided evidence that LSU actually knew that the pay structure violated the FLSA, or that LSU ignored or failed to investigate Ikossi's complaints.[24] Without more evidence, Ikossi's allegations of willfulness cannot survive the summary judgment stage.

Because Ikossi has not provided evidence that LSU acted willfully, the two-year statute-of-limitations period applies. The latest date for which Ikossi argues that her Equal Pay Act claim accrued was August 1998, when she receivd her last sabbatical paycheck. She did not file suit until November 2000, which is beyond the two-year limitations period. Thus, her claim is barred.

*    *    *

For these reasons, we AFFIRM the district court's grant of summary judgment with respect to Ikossi's Title VII discrimination claim, Louisiana Employment Discrimination Law claim, and Equal Pay Act claim, REVERSE the grant of summary judgment on her Title VII retaliation claim, and REMAND to the district court for further proceedings consistent with this opinion.

---

[24] *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness where the employer admitted that it knew its employees were being paid incorrectly and the employer's attorney advised the employer not to investigate); *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (upholding a district court's finding of willfulness where the employer was notified by a government representative that its payment practices violated the FLSA and the employer continued those practices without further investigation).