# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 23, 2011

No. 10-10166

Lyle W. Cayce
Clerk

JOHN MCIVER,

Plaintiff - Appellant/Cross-Appellee

v.

AMERICAN EAGLE AIRLINES, INC.,

Defendant - Appellee/Cross-Appellant

Appeal from the United States District Court
for the Northern District of Texas
No. 4:08-CV-740

Before GARZA, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

John McIver ("McIver") appeals the district court's entry of a final judgment in favor of his former employer, American Eagle Airlines, Inc. ("American Eagle") on his age discrimination claims. McIver argues that the district court erred by: (1) declaring a mistrial and setting aside the first jury verdict in favor of McIver; (2) misallocating the burden of proof on a statute of limitations issue; (3) entering summary judgment *sua sponte* in favor of American Eagle on McIver's leave of absence claim without providing sufficient

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10166

notice to McIver; and (4) not permitting McIver to introduce certain evidence at trial. American Eagle filed a cross-appeal, contending that the district court erred in refusing to grant judgment as a matter of law on American Eagle's limitations defense and instead submitting a jury charge on McIver's unpleaded theory of equitable estoppel. For the reasons set forth below, we AFFIRM the judgment in favor of American Eagle. Because we affirm the judgment, we do not reach American Eagle's cross-appealed issue.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

McIver began working for American Eagle in 1988 as a pilot. He joined the training department in 1998, where he trained pilots on the Saab aircraft. In 2003, James MacAlla ("MacAlla") hired McIver into the jet training program. At the time McIver transferred to this department, he was 58 years of age. In 2005, when McIver was 60, he was notified that he was being "displaced" (i.e., terminated). MacAlla hand-delivered a letter to McIver on November 17, 2005 notifying him of the decision. McIver later claimed that on this date, MacAlla told him that the displacement was a "mistake" and that he would "check into it." American Eagle disputes that MacAlla ever made this statement.

McIver filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 26, 2006, claiming that he was unlawfully terminated on December 1, 2005 due to his age. On September 3, 2008, McIver filed a new charge of discrimination, adding the allegation that he had been improperly denied a leave of absence. McIver filed suit in federal district court on December 3, 2008, alleging that American Eagle violated the Age Discrimination in Employment Act of 1967 ("ADEA") by displacing him and denying him an opportunity to take a leave of absence because of his age.

The judge bifurcated the first trial into two phases. The first phase determined whether McIver's claims were barred by the statute of limitations. The second phase would decide whether American Eagle did, in fact,

No. 10-10166

discriminate against McIver on the basis of age.  As to the first phase, the district court concluded that American Eagle was entitled to a statute of limitations defense because McIver admitted to receiving notice of termination on November 17, 2005, meaning that the statute of limitations had expired before he filed his charge with the EEOC.  Therefore, McIver bore the burden to establish a ground for avoiding that defense.  McIver argued that because MacAlla told him that his termination was a "mistake," he did not know that he was being displaced until December 1, 2005 (the date he was actually terminated), so the statute of limitations should be tolled because the defendant affirmatively misled McIver.  MacAlla claimed that he never told McIver that his termination was a "mistake."  The trial court determined that this factual dispute was a jury issue with McIver bearing the burden of proof.

The case proceeded to trial for the first time on November 9, 2009.  The jury found in McIver's favor on the limitations issue during the first phase of the trial.  During the second phase, however, a juror informed the court that he saw MacAlla, American Eagle's witness, being coached by a member of the audience, who was later identified as American Eagle's general counsel.  The judge was satisfied that this was not the case, but he was nonetheless worried that the jury was prejudiced against American Eagle.  American Eagle moved for a mistrial, which the court granted.  The court also expressed concern with McIver's behavior on the witness stand during the first phase of the trial and expressed significant concern that the jury was prejudiced against American Eagle during that phase as well.  The judge noted that McIver was doing "everything he could to flirt with the jury, including nodding at the jury, staring at the jury when he had an opportunity, and in effect communicating with the jury."  Additionally, the judge commented that McIver's behavior was "totally unacceptable and was such an aggravated situation, I was tempted to order a mistrial and start over again . . . ."  Therefore, the judge granted a mistrial as to both phases.

3

No. 10-10166

The second trial began on January 19, 2010. This trial was not bifurcated, and this time the jury returned a verdict in favor of American Eagle on the limitations issue, finding that MacAlla did not tell McIver that he was terminated "by mistake." The district court entered a final judgment for American Eagle on January 20, 2010. McIver timely appealed, and American Eagle timely filed its cross-appeal.[1]

## II.  ANALYSIS

### A.    Did the district court err by declaring a mistrial and setting aside the first jury verdict in favor of McIver?

"The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court, and reversible only for an abuse of that discretion." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). This is because the trial judge had the opportunity to "observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record . . . ." *Id.*  However, we apply a "broader review to orders granting new trials than to orders denying them." *Id.*  "Although the standard of review remains abuse of discretion, when the district court grants a new trial our inquiry generally is broader because of our respect for the jury as an institution and our concern that the party who persuaded the jury should not be stripped unfairly of a favorable decision." *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988).

A court may grant a motion for a new trial because of actual or implied juror bias. *See United States v. Scott*, 854 F.2d 697, 699-700 (5th Cir. 1988).  In *Scott*, a juror failed to disclose during voir dire that his brother was a law

---

[1] The district court had jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as the claims asserted in the complaint were based upon alleged violations of a federal statute, the ADEA, 29 U.S.C. § 621 *et seq.*, as amended.  Final judgment was entered in this matter on January 20, 2010, which disposed of all claims remaining in the litigation. This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

No. 10-10166

enforcement official. *Id.* at 698.  After the relationship came to light, the district court concluded that although the juror's failure to answer the question honestly was "unreasonable," a new trial was not warranted because the juror sincerely believed that he could be impartial. *Id.*  We reversed, concluding that the failure to disclose the relationship raised a "genuine prospect of actual bias," and the district court erred in denying the motion for a new trial.  *Id.* at 700.

In cases where we have found an abuse of discretion, we concluded that the district judge substituted his or her judgment for that of the jury without a basis for doing so.  *See, e.g., Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998)(judge questioned jurors after the verdict and used that discussion to grant a new trial); *Brun-Jacobo v. Pan Am. World Airways, Inc.*, 847 F.2d 242, 244 (5th Cir. 1988)(judge's conclusion that the verdict was unreasonably low was not supported by the evidence).  In this case, the trial judge instructed the attorneys during the pretrial conference that he would not "permit any playing to the jury or currying favor with the jury."[2]  Nonetheless, the record indicates that McIver spoke directly to the jury during the first phase of the first trial.  During the second phase, a juror came forward to tell the court that he believed American Eagle's witness was being coached by a member of the audience because the witness "never looked at the jury."  The judge stated that he believed that this juror and possibly the other jurors were prejudiced against American Eagle because American Eagle's witness followed the trial judge's instruction not to answer questions directly to the jury.

---

[2]  McIver argues that the judge did not specifically instruct the witnesses not to curry favor with the jury.  While acknowledging that he did not mention witnesses specifically in his pre-trial instructions to the attorneys, the judge stated: "I instructed you and the other lawyer that there would not be any plays to the jury during this trial and that would certainly include your client trying to charm the jury by smiling at them and mouthing . . . at the jurors as they walked back to the jury box."

No. 10-10166

Prior to announcing his decision to set aside the jury's verdict, the trial judge made several observations on the record about McIver's conduct during the first phase of the trial that raised concerns about prejudice against American Eagle. For example, the judge observed that "MacAlla's credibility was, unfortunately, tainted by the fact that he complied with this court's instructions and McIver did not." In contrast, McIver "was communicating with the jury by nods of his head and facial expressions as they were coming back to the jury box." According to the court, "Mr. McIver was on the stand doing what he could to infatuate the jury with him, by talking to the jury instead of answering questions to the lawyers." The judge noted that "part of the problem is they [the jurors] saw how Mr. McIver treated them and they are now drawing—they have established him as the norm, somebody that charms them. And if another witness doesn't charm them, there's something wrong with that other witness, at least some of the members of the jury—at least one of the members of the jury has reached that conclusion."

We recognize that this is an extremely close case and that we must consider two important interests: McIver's interest in upholding the jury's verdict and American Eagle's interest in having an unbiased jury. Considering all the facts, we cannot say that the trial judge abused his discretion in *sua sponte* entering a motion for a new trial. The trial judge's decision was based on some evidence that the jury was biased against American Eagle because American Eagle's witness followed the court's instructions not to look at the jury while testifying while McIver did not. We conclude that it was not unreasonable for the district judge to conclude that the jury bias began during the first phase of the trial and was enough to invalidate the jury's verdict. Because we must resolve doubts about the decision to grant a new trial in favor of the district judge, *see United States v. Baytank, Inc.*, 934 F.2d 599, 618 (5th Cir. 1991), we

6

No. 10-10166

conclude that the district judge did not abuse his discretion in granting a new trial.

Additionally, this case does not present facts similar to either *Peterson* or *Brun-Jacobo*, where we found an abuse of discretion. *Peterson*, 141 F.3d at 577; *Brun-Jacobo*, 847 F.2d at 244. In those cases, the trial court substituted its opinion for that of the jury without any factual basis for doing so. Here, in contrast, the trial judge recited evidence from which we can infer that juror bias did, in fact, exist.

**B.    Did the district court err by submitting an instruction and verdict form to the jury that allocated the burden of proof on the equitable tolling issue to McIver?**

McIver also argues that the district court incorrectly placed the burden of proof on him to show that the statute of limitations was tolled. Generally, the party raising an affirmative defense has the burden of proof on that issue. *See Crescent Towing & Salvage Co. v. M/V ANAX*, 40 F.3d 741, 744 (5th Cir. 1994). To be timely, McIver had to file his EEOC charge within 300 days of the alleged discriminatory act. *See* 29 U.S.C. § 626(d). If American Eagle established that the charge was not filed on time, then McIver had the burden to show that the limitations period was subject to equitable tolling or equitable estoppel. *See Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992)*; Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir. 1991).

The 300-day time period begins to run "when the employee receives notice of the allegedly discriminatory decision, not when the employment actually ceases." *Conaway*, 955 F.2d at 362. In an ADEA action, this means that "[w]hen a plaintiff alleges an unlawful discharge, the statute of limitations begins to run when the plaintiff is *notified* that his employment is terminated." *Chapman v. Homco, Inc.*, 886 F.2d 756, 758 (5th Cir. 1989) (per curiam) (emphasis added).

No. 10-10166

In his complaint, McIver unequivocally admitted to receiving notice of termination in November of 2005. The district court and American Eagle both correctly note that facts admitted in a pleading are binding judicial admissions. *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1285 (2010). Additionally, McIver conceded in the Joint Pretrial Order that he was notified of his displacement via a hand-delivered letter on November 17, 2005. McIver filed his EEOC charge on September 26, 2006, 313 days after he received notice that he was being displaced.

We conclude that because McIver admitted to receiving notice of his displacement on November 17, 2005, American Eagle conclusively established that the statute of limitations had run, and the trial judge properly concluded that McIver bore the burden to show that equitable tolling or equitable estoppel applied. McIver does not dispute that he received the termination letter on November 17, 2005, and according to clearly established Fifth Circuit precedent, this notice triggers the limitations period. *Chapman*, 886 F.2d at 758. Whether or not McIver's version of the November 17, 2005 conversation occurred goes to whether the limitations period was tolled, not to whether it was triggered. *See id.*; *Conaway*, 955 F.2d at 362. The district court properly placed the burden of proof in submitting the tolling question to the jury, allowing the jury to determine whether MacAlla told McIver that there had been a "mistake" about McIver's displacement.

McIver also argues that American Eagle's version of the facts conclusively establish tolling. MacAlla admitted during the first trial that he told McIver that it "wasn't the case" that McIver was "being displaced because he was about to be 60 and he couldn't do line checks after he was 60 and [American Eagle was] getting rid of people over age 60." McIver argues that MacAlla's comment actively misled him about American Eagle's age discrimination and prevented

him from asserting his rights. Because McIver did not raise this issue before the district court, he waived this argument. *Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004) ("Arguments not raised in the district court cannot be asserted for the first time on appeal.").

**C.   Did the district court err by *sua sponte* entering summary judgment on McIver's leave of absence claim without providing sufficient notice to McIver or by excluding the testimony of certain witnesses?**

The jury found against McIver on the limitations issue in the second trial; therefore, any alleged errors during the liability phase are harmless. Consequently, we need not address McIver's arguments that the district court erred in excluding evidence relevant to the liability phase of the trial. We also need not address McIver's assertion that the district court erred in *sua sponte* entering summary judgment on his leave of absence claim for the same reason.

With respect to McIver's evidentiary objections to testimony excluded during the limitations phase of the trial, we conclude that McIver waived any objections by presenting no legal arguments as to why the district court erred. *See Douglas W. ex rel. Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210-11 n.4 (5th Cir. 1998) (declining to address a party's contention that the trial court erred in striking several exhibits because the party provided no explanation of why the district court erred); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) ("[T]he failure to provide any legal or factual analysis of an issue results in waiver of that issue."). We therefore reject McIver's remaining objections.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment in favor of American Eagle.