# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30820
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2016

Lyle W. Cayce
Clerk

MURPHY J. PAINTER,

      Plaintiff - Appellant

v.

KELLI SUIRE,

      Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-511

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Defendant–Appellee Kelli Suire worked under Plaintiff–Appellant Murphy J. Painter as an administrative assistant during Painter's time as Commissioner of the Louisiana Office of Alcohol and Tobacco Control. As part of internal complaints that would later provide the basis for a search warrant for Painter's office and, separately, in a state court lawsuit, Suire made a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

number of statements alleging that Painter had sexually harassed and had stalked her.  Painter thereafter brought the instant defamation suit against Suire, asserting reputational harm and mental anguish as a result of Suire's statements.  In a bifurcated trial, the first jury determined that Suire's statements were defamatory and therefore actionable.  In the second phase of the trial, another jury found that Painter had not established that he was injured by Suire's statements, and the district court dismissed his claims with prejudice.  Painter now appeals, challenging several of the district court's rulings in the second phase of the trial.  Because we find no reversible error on the part of the district court, we AFFIRM the judgment of that court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2011, Plaintiff–Appellant Murphy J. Painter filed the instant action against Defendant–Appellee Kellie Suire in Louisiana state court, bringing claims of defamation and negligence.  This action stems from a long and detailed history between Painter and Suire, but we recount only those facts necessary to our decision today.

### A. Facts Underlying Painter's Defamation Suit

The basis of Painter's claims arose during his time as Commissioner of the Louisiana Office of Alcohol and Tobacco Control (ATC).  Suire was hired as an administrative assistant in early 2007, left that position several months later, and was rehired in the summer of 2007 as Painter's secretary.  Painter contended that in mid-2009, Suire's job performance began to decline, and he issued a reprimand to her on August 29, 2009.

Thereafter, Suire met with Dee Everett, who was the human resources director of the Louisiana Department of Revenue—the state department within which ATC is contained—to complain of Painter's treatment of her.  Following Suire's meeting with Everett, the Department of Revenue hired an external investigator, Kecia Campbell, to investigate Suire's complaint.  When

Campbell interviewed Suire, Suire complained that Painter had sexually discriminated against her, that he was obsessed with her, and that he had attempted to control her life. Suire alleged that Painter, *inter alia*, often called her outside of work hours, inquired about her personal life, drove by her house several times, called her parents to inquire about her whereabouts, and made suggestive comments about her interactions with her coworkers. Suire further reported that Painter "want[ed] to control every aspect of [her] life, both professional and personal," but that Painter had not sexually harassed her.

Suire worked at ATC through November 2009. On August 4, 2010, Suire filed a complaint against Painter with the Louisiana Office of State Inspector General (OIG). OIG interviewed Suire on August 9, 2010, regarding her complaint against Painter. Reiterating many of her previous complaints to OIG, Suire indicated that she believed that Painter had mistreated her because she refused his romantic advances, but she did not specifically allege that she was sexually harassed. She also stated that Painter misused state law enforcement databases. After Suire's second interview with OIG officials, Painter conducted a computer search on Suire using a law enforcement database. OIG officials later interviewed other ATC employees about Painter's activities and began an investigation into his potential misuse of law enforcement databases.

On August 13, 2010, Painter was called to the Governor's office in the State Capitol, and his employment with ATC ended.[1] On August 16, 2010, OIG prepared and filed an application for a search warrant for Painter's ATC office and computers, which was later signed by a state court judge. The warrant included the statement that "[i]ndependent interviews conducted with two

---

[1] Suire contends that Painter resigned, while Painter maintains that he was terminated.

No. 15-30820

[Louisiana] ATC enforcement officers have substantiated the stalking victim's allegations as to Painter's stalking of the victim, as well as his misuse of the computerized database known as Voyager."

On August 26, 2010, Suire petitioned a Louisiana state court for injunctive relief and a temporary restraining order against Painter, which she supported with an affidavit stating that she had resigned from ATC because of the "continuous and ongoing harassment, intimidation, abuse, and stalking at the hands of . . . Murphy Painter."  With the consent of Painter, a preliminary injunction was issued on September 7, 2010, which prohibited Painter from stalking or harassing Suire and required him to stay away from her and her family.  Suire later supplemented and amended her state court petition to add a claim for damages under 42 U.S.C. § 1983, alleging violations of her clearly established rights under the First and Fourteenth Amendments based on Painter's sexual harassment of her.[2]  In this amended petition, she named Painter in his individual and official capacities and the Louisiana Department of Revenue as defendants.

While her damages claims were pending before the state court, Painter was found guilty of contempt of court on February 24, 2011, for violating the preliminary injunction entered against him.  Later, on July 8, 2011, the Department of Revenue and Painter in his official capacity settled Suire's state court claims for $100,000.  Painter, in his individual capacity, however, refused to consent to the settlement.  The instant defamation suit followed on August 12, 2011.

---

[2] In her amended complaint, Suire alleged that she was "subjected to unwelcome, sexual harassment, consisting of, but not limited to . . . [c]onstant comments by . . . Painter directed at [Suire] about her buttocks, her chest, and her body, all of a sexually explicit nature; [c]onstant comments by . . . Painter directed at [Suire] about her clothing, all of a sexually explicit nature . . . ."

## B. Painter's Defamation Suit

Painter initially filed his defamation suit against Suire in Louisiana state court, and Suire, who by that point had become a citizen of Florida, removed the action to the United States District Court for the Middle District of Louisiana on August 21, 2012.[3]  Between the time the suit was filed and the time it was removed, Painter was indicted in federal court on 42 counts of computer fraud, making false statements, and aggravated identity theft, all of which were later dropped by the government, dismissed by the court, or resulted in a not guilty verdict from a jury.

On October 2, 2014, the district court ordered the trial on Painter's defamation claims against Suire to be bifurcated, with separate juries hearing the liability and damages phases of the trial.  The trial on the liability issues was conducted between October 7 and 10, 2014, and was to determine whether Painter had been subjected to defamation when Suire uttered the words "sexual harassment" and "stalking" in two instances: (1) her state court lawsuit for injunctive relief and (later) seeking damages, and (2) her statements made to OIG, which were later included in a search warrant affidavit.  Following the trial, the liability jury was presented with a one-page verdict form asking whether Painter had proven by a preponderance of the evidence that Suire's statements, with respect to OIG's search warrant and her state court suit, were false or that she acted in reckless disregard as to the statements' truth or falsity.  The jury answered "No" as to the statements concerning OIG's search warrant application, but yes as to Suire's statements in her state court suit.

The second phase of the trial, which occurred between August 12 and August 14, 2015, concerned only the issues of injury and damages.  The

---

[3] In addition to his suit against Suire, Painter also filed defamation suits against the Governor of Louisiana, several state entities, and several state employees in their official capacities in Louisiana state court on August 19, 2011.

No. 15-30820

damages jury responded "No" to the following question: "Do you find Plaintiff, Murphy Painter, has proven by a preponderance of the evidence, that he sustained injury to his reputation and/or for mental anguish and/or emotional distress as a result of specific statements made by Kelli Suire in her State Court lawsuit?"[4]   Because the jury found that Painter had failed to establish any injury, the district court entered final judgment in favor of Suire, dismissing all of Painter's claims.   Painter timely appealed, raising three general challenges: (1) the district court improperly excluded evidence; (2) the district court improperly instructed the jury; and (3) the jury's verdict was biased or otherwise improperly motivated.   We address each of these challenges in turn.

## II. EXCLUSION OF EVIDENCE

Under Louisiana law, "[f]our elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674 (La. 2006).   The liability jury found that Painter had established the first three elements, and the damages jury was tasked with determining whether Painter had established injury and, if so, the extent of that injury.   Painter's challenges on appeal center on the damages phase of the trial.

His first challenge concerns three separate evidentiary rulings made by the district court.   Painter argues that the district court improperly excluded

---

[4] After the jury returned its verdict, Painter argued that the verdict was not supported by the evidence adduced at trial.   The district court interpreted this argument as a motion under Federal Rule of Civil Procedure 50, and denied the motion.   Painter also argued that the jury's verdict was nonresponsive to the verdict form, as the jury unnecessarily answered questions on the form.   The district court "denie[d] [Painter's] objection to nonresponsiveness."

evidence from the damages phase when it (1) prevented him from reviewing defamatory materials with Suire in front of the damages jury; (2) refused to admit video recordings of local news stories that reported Suire's defamatory allegations; and (3) prevented Painter from referencing his criminal trial and his acquittal in that trial. "We 'review the trial court's evidentiary rulings under an abuse of discretion standard.'" *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 667 (5th Cir. 1999)). Federal Rule of Civil Procedure 61 further provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61. And we "must disregard all errors and defects that do not affect any party's substantial rights." *Id.*

Turning to Painter's first evidentiary challenge, we observe no abuse of discretion in the district court's evidentiary ruling. On appeal, Painter argues that the district court erred when it prevented him from reviewing the following materials with Suire in front of the damages jury: Suire's affidavit filed in support of her petition for a temporary restraining order, her amended petition seeking damages, and prior testimony by both Suire and Painter concerning the nature of the defamatory statements she made. While all of this evidence was relevant during the liability phase of the trial, we agree with the district court that, during the damages phase, the court's purpose was "to decide whether or not there was injury and if so the nature and extent of that injury and whether damages are called for" and that the issue of liability was

"irrelevant," as it had already been decided by the first jury.[5]   Because the evidence Painter sought to review with Suire in front of the damages jury was not relevant to the issue of damages, the district court did not abuse its discretion by preventing Painter from reviewing these materials.  *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 431 (5th Cir. 2014), *as revised* (Sept. 2, 2014), *cert. denied*, 135 S. Ct. 1430 (2015) ("[T]he court did not abuse its discretion by declining to hear more evidence on a matter that had already been decided."); *see also* Fed. R. Evid. 403 (allowing a court to exclude evidence if it is "needlessly . . . cumulative").

With respect to Painter's second evidentiary challenge—that the district court refused to admit video recordings of local news stories that reported Suire's defamatory allegations—we similarly find no abuse of discretion by the district court.  Painter attempted to admit videos of local news stories that his daughter had recorded on her home digital recording device.  After the district court correctly noted that these recordings contained hearsay, Painter argued that they could nevertheless be admitted for several reasons.  *See* Fed. R. Evid. 802.  Painter first argued that the videos contained Suire's statements from her state court lawsuit and were therefore not hearsay under Federal Rule of Evidence 801(2).  However, the district court correctly noted that the videos also contained statements by out-of-court declarants, which were hearsay within the meaning of Rule 801(c).  Painter next argued that the videos were admissible as business records under Rule 803(6)(B).  In response to this argument, the district court noted—and we agree—that Painter's daughter was not a proper "custodian" of these records, so the videos could not be admitted as business records.  *See* Fed. R. Evid. 803(6)(D).

---

[5] Moreover, the district court correctly noted that the statements about which Painter sought to question Suire in front of the damages jury were in the record and that the jury would be able to read them.

No. 15-30820

Finally, Painter argued that the videos were not inadmissible hearsay because they were not offered "to prove the truth of the matter asserted in the statement[s]" in the videos, Fed. R. Evid. 801(c)(2), but only to show that Suire's statements had been re-publicized. *See Thompson v. Bank One of La., NA*, 134 So. 3d 653, 663 (La. Ct. App. 2014) ("A defendant who utters a defamatory statement is responsible for all republication that is the natural and probable consequence of the author's act."). With respect to this argument, the district court explained "even if [Painter was] offering them not for the truth of the matter asserted, because of the extraneous information in them and because Ms. Suire doesn't appear on them . . . they're more prejudicial than they are probative."  Given Suire's absence from these videos and the other extraneous information contained therein, we agree with the district court that the videos were more prejudicial than probative.  Therefore, the district court did not abuse its discretion in excluding these videos.  *See* Fed. R. Evid. 403.

Turning to Painter's final evidentiary challenge—that the district court improperly prevented him from referencing the results of his criminal trial—we conclude that the district court committed no reversible error.  In granting Suire's motion in limine to prevent Painter from "referenc[ing] his acquittal of his separate federal criminal charges," the district court "found that, allowing [Painter] to reference his acquittal of his criminal charges, which did not include sexual harassment or stalking, would not be relevant in the pending matter under Rule 401 of the Federal Rules of Evidence."  Additionally, the court noted the potential for jury confusion and "the fact that [Painter] was acquitted of unrelated computer crimes ha[d] no bearing on whether he stalked or sexually harassed [Suire]."  We agree with the district court's reasoning, as Painter's criminal charges were, at best, tangentially related to his defamation suit against Suire. *See* Fed R. Evid. 401.  Allowing him to discuss these charges and his acquittal would have risked jury confusion, and the district court

No. 15-30820

properly avoided this risk by excluding such discussion. *See* Fed R. Evid. 403. Overall, we find no abuse of discretion in any of the evidentiary rulings Painter challenges on appeal.[6]

### III. JURY INSTRUCTIONS

Painter challenges the jury instructions as failing to properly guide the jury on defamation under Louisiana law. We review challenges to jury instructions for abuse of discretion and afford the trial court great latitude in the framing and structure of jury instructions. *United States v. Carrillo*, 660 F.3d 914, 925–26 (5th Cir. 2011). "In order to demonstrate reversible error, the party challenging the instruction must show that the charge 'creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.'" *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014) (quoting *Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003)). Moreover, "[t]he instructions need not be perfect in every respect provided that the charge in general correctly instructs the jury, and any injury resulting from the erroneous instruction is harmless." *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir.1985).

The district court instructed the damages jury in the instant case as follows:

---

[6] We also find that Painter's substantial rights would not have been affected even assuming, *arguendo*, that the district court's evidentiary rulings were erroneous. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) ("Erroneous evidentiary rulings by the trial court constitute reversible error only when those rulings have affected a party's substantial rights."). If Painter had prevailed on his first evidentiary challenge, his ability to establish that he was injured as a result of Suire's defamatory statements would not have been meaningfully improved, as the nature of Suire's statements are relevant to whether they were defamatory, not whether Painter suffered any injury. Had Painter prevailed on his second challenge, his ability to establish damages would not have been significantly better because he testified separately about the republication of Suire's statements. And finally, if Painter had been able to discuss his criminal trial and subsequent acquittal, that evidence would not have improved Painter's ability to establish an injury as a result of Suire's defamation, as the charges at that trial were not germane to her statements concerning stalking and sexual harassment.

No. 15-30820

During this second phase of the trial you are not to concern yourself with the issue of liability, rather, the sole issue that you will be asked to decide is whether Murphy Painter sustained any injuries caused by statements made by Ms. Suire in her state court lawsuit. And if so, the amount of damages, if any, to award Mr. Painter.

A person who utters a defamatory statement is responsible for all republication that is the natural and probable consequence of the author's act.

The injury resulting from defamatory statements may include non-pecuniary or general damages such as injury to reputation, personal humiliation, embarrassment, and mental anguish. Regardless of the type of injury asserted, however, the plaintiff must present competent evidence of the injury suffered. The plaintiff must also demonstrate the defamatory statements were a substantial factor in causing the harm.

If Murphy Painter has proven by a preponderance of the evidence that he sustained injuries caused by Kelli Suire, you must determine the damages to which Murphy Painter is entitled if any.

Painter challenges these instructions, arguing they caused the jury to find that Painter failed to prove injury as a result of Suire's defamatory statements. He argues that this was error because a previous jury had already determined that Suire had uttered *per se* defamatory words. And under Louisiana law, when a plaintiff proves the publication of *per se* defamatory words, the elements of falsity, injury, and malice are presumed—although, they may be rebutted by the defendant. We cannot agree with Painter's characterization of Louisiana law and, accordingly, perceive no abuse of discretion in the district court's jury instructions.

Assuming that Painter had established that Suire uttered *per se* defamatory statements,[7] Painter may still be required to prove that he suffered

---

[7] Under Louisiana law, "[w]ords which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se." *Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004). The liability jury did not explicitly find that Suire's statements were *per se* defamatory.

11

an injury as a result of those statements under Louisiana law.  The Supreme Court of Louisiana has explained that "[w]hen a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) *are* presumed, but may be rebutted by the defendant . . . [and] [t]he element of injury *may also be* presumed." *Costello*, 864 So. 2d at 140 (emphasis added). Thus, the element of injury is not necessarily presumed even if a plaintiff establishes that the defendant uttered *per se* defamatory words.  *See also id.* at 141 ("Regardless of the type of injury asserted, however, a plaintiff must present competent evidence of the injuries suffered."); *see also Manale v. City of New Orleans, Dep't of Police*, 673 F.2d 122, 125 (5th Cir. 1982) ("We have little difficulty in agreeing with the District Court that [the defendants'] statements were defamatory per se [under Louisiana law]. . . . With malice and falsity presumed, [the plaintiff] had only to prove injury.").  In addition to establishing injury, "[a] plaintiff must also demonstrate that the defamatory statements were a substantial factor in causing the harm." *Costello*, 864 So. 2d at 141.

In its instructions, the district court paraphrased the *Costello* court's explanation of the injury element of a defamation claim.  Therefore, the district court properly instructed the jury, and we have no "substantial and ineradicable doubt [as to] whether the jury has been properly guided in its deliberations." *Taita*, 351 F.3d at 667 (quoting *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994)).

## IV. THE JURY'S VERDICT

Painter's final challenge concerns the verdict rendered by the damages jury.  Painter first argues that the evidence he adduced supported his claims that he suffered mental anguish and harm to his reputation as a result of Suire's defamation and that, therefore, the district court should have granted his motion for judgment as a matter of law.  However, Painter failed to raise

this argument in a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) before the case was submitted to the jury. Because Painter failed to raise this argument in a Rule 50(a) motion prior to the submission of the case to the damages jury and raised it only in a Rule 50(b) renewed motion for judgment as a matter of law, our review is "only for plain error." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 292 (5th Cir. 2007); *see also Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 707–08 (5th Cir. 2011). "Under plain error review, we must decide 'whether there was any evidence to support the jury verdict.' . . . If any evidence exists that supports the verdict, it will be upheld." *Id.* (quoting *Lincoln v. Case*, 340 F.3d 283, 290 (5th Cir. 2003)).

We cannot say that no evidence supported the jury's verdict. With respect to Painter's claim that he suffered mental anguish and emotional distress, Painter testified that he "ha[d] no mental disorder" as a result of Suire's defamatory statements. He also stated that he did not have a psychological impairment and was not diagnosed by a medical professional with any kind of disorder. With respect to the damage to Painter's reputation, the record contains sufficient evidence from which the jury could have determined that Painter did not suffer reputational harm as a result of Suire's defamatory statements.[8] Based on the existence of some evidence supporting the jury's verdict, we decline to disturb that verdict on plain error review.

Painter's second challenge to the damages jury's verdict concerns the way in which the jury completed the verdict form. Specifically, the jury first

---

[8] For example, Painter testified that, in addition to the instant lawsuit, he had filed suit against the State of Louisiana, the Governor of Louisiana, and other defendants, alleging that their actions surrounding his termination on August 13, 2010, caused harm to his reputation. The damages jury could have concluded that these actions, not the defamatory statements made by Suire, caused Painter's reputational injury. *See Costello*, 864 So. 2d at 141 (requiring that a defamation plaintiff establish causation).

responded "no" to the question of whether Painter had carried his burden to show that he sustained injury as a result of Suire's defamatory statements. Based on this negative response, the jury should have signed the form and returned it to the court. However, the jury proceeded to other questions, answering "yes" to the question of whether Painter contributed to his injuries and stating that Painter was "100%" at fault for any injury he suffered. From these unnecessary answers, Painter infers that the jury was biased against him.

It is not clear from the record whether Painter raised these arguments as part of his Rule 50 motion for judgment as a matter of law or if he was attempting to move for a new trial because of the jury's bias. If it is the former, then we review the district court's rejection of these arguments for plain error. *Navigant*, 508 F.3d at 292. If it is the latter, then our review is for abuse of discretion. *McIver v. Am. Eagle Airlines, Inc.*, 413 F. App'x 772, 775 (5th Cir. 2011) (per curiam) (unpublished). Under any standard of review, however, the district court committed no error in rejecting Painter's arguments. The jury's thorough answers to the questions on the verdict form, while unnecessary based on the instructions on that form, were entirely consistent and support its finding that Painter failed to establish that he was injured.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.